Michael J. Ippolito and Agnes Ippolito v. Commissioner.
Ippolito v. Commissioner
Docket No. 84486.
United States Tax Court
T.C. Memo 1965-167; 1965 Tax Ct. Memo LEXIS 163; 24 T.C.M. (CCH) 894; T.C.M. (RIA) 65167; June 24, 1965
George V. Delson and Arnold Broser, for the petitioners. Robert D. Whoriskey and Lee A. Kamp, for the respondent. FAY
Memorandum Findings of Fact and Opinion FAY, Judge: Respondent determined a deficiency *164 in the petitioners' income tax for the calendar year 1955 in the amount of $44,608.79. The parties have disposed of certain issues raised in the pleadings. The remaining issues for decision are: (1) Whether petitioners are entitled to deduct, within the meaning of section 163(a) of the Internal Revenue Code of 1954, [1] the amount of $37,777.77 in 1955 as prepaid interest on a purported indebtedness; (2) Whether petitioners are entitled to deduct under any provision of the Internal Revenue Code of 1954 a loan placement fee in the amount of $2,500 to the Gibraltar Financial Corporation in connection with a loan of $1,000,000; (3) Whether petitioners are entitled to deduct a claimed $6,000 fee under the provisions of section 212, paid to a certified public accountant retained for financial management and tax assistance, disallowed by respondent to the extent of $5,000; and (4) Whether, as an alternative, petitioners can deduct in 1955 net out-of-pocket expenses in the amount of $4,458.18, incurred by petitioners in connection with a loan of $1,000,000 to purchase United States Treasury Certificates of Indebtedness with borrowed funds. *165 Findings of Fact Some of the facts have been stipulated and, as stipulated, are incorporated herein by this reference. Petitioners Michael J. Ippolito and Agnes Ippolito are husband and wife residing in Huntington Station, Suffolk, New York. They filed a joint Federal income tax return, on the cash receipts and disbursements basis, for the calendar year 1955 with the district director of internal revenue, Brooklyn, New York. References to petitioner hereinafter are intended to apply to Michael J. Ippolito. During the year 1954, petitioner was found to be the holder of a winning ticket on the Irish Sweepstakes and, in 1955, collected $138,567.50. On or about December 23, 1955, petitioner, through his accountant, purchased from the Gibraltar Financial Corporation (hereinafter referred to as GFC) $1,000,000 face amount of U.S. Treasury Certificates of Indebtedness (hereinafter called Treasury certificates), 2 5/8 percent due December 1, 1956, at a price of 100.1. December 23, 1955, fell on a Friday and the next business day was Tuesday, December 27, 1955. Normally, in the Government bond market, the settlement date (i.e., the day on which delivery of securities and payment *166 therefor occur) falls on the next business day following the transaction date. Petitioner executed a note, with recourse, dated December 27, 1955, for $1,000,000 payable to GFC for the balance of the purchase price, bearing interest at the rate of 4 percent per annum and due December 1, 1956. The promissory note provided, inter alia, as follows: (a) As security for the payment of the note, the petitioner pledged with GFC the $1,000,000 face value of Treasury certificates; (b) Petitioner could prepay the principal sum of the loan at any time without penalty except that if prepayment occurred within 30 days from the date of the note, he would be liable for 30 days' interest thereon. (c) Petitioner gave GFC, among other things, the right to hypothecate and rehypothecate said securities. Petitioner paid GFC $1,864.75 by check as margin on the purchase of the Treasury certificates. On or before December 27, 1955, petitioner paid, by check, $37,777.77 to GFC representing interest on the note for $1,000,000 to the maturity of the note. On or before December 27, 1955, petitioner paid $2,500, by check, to GFC as a loan placement fee in connection with the $1,000,000 loan. GFC *167 was a dealer in municipal, State and local bonds. On or about December 23, 1955, GFC purchased $1,000,000 face amount of Treasury certificates (evidenced by certificate No. 1068) from C. J. Devine & Co. (hereinafter referred to as Devine), a wellknown dealer in Government bonds. On that date, GFC instructed Devine to deliver the said Treasury certificates to Irving Trust Company (hereinafter referred to as ITC) and to receive payment from ITC in the amount of $1,001,552.25. On December 27, 1955, Devine delivered the Treasury certificates, through its agent, Manufacturers Trust Company, to ITC. Upon receipt of the Treasury certificates (December 27, 1955), ITC paid Devine $1,001,552.25 through its agent. On that date ITC mailed its debit advice to GFC acknowledging receipt of the Treasury certificates for GFC's account. By a letter dated December 30, 1955, from GFC to petitioner in care of petitioner's accountant, GFC acknowledged receipt of the securities which were held as collateral under the terms of the note. On or about December 27, 1955, GFC borrowed from Cleveland Trust Company (hereinafter referred to as CTC) a total of $1,945,000 on a 3 1/2 percent interest demand note *168 pledging as collateral security therefor $2,000,000 face amount of Treasury certificates. As part of such borrowing by GFC from CTC, GFC rehypothecated the $1,000,000 face amount of the Treasury certificates previously pledged with it by petitioner to secure $965,000 of the aforesaid total loan of $1,945,000. On December 27, 1955, ITC sent GFC a credit advice memo reflecting the wire transfer of the Treasury certificates through the Federal Reserve Bank, Cleveland, Ohio, for the account of CTC. Pursuant to the delivery by ITC to the Federal Reserve Bank of New York, ITC received from CTC $1,945,000 which it credited to the account of GFC. The receipt of such funds by GFC was recorded on its books as "Loans Payable - CTC." On or about January 12, 1956, petitioner sold to GFC the $1,000,000 face amount of Treasury certificates at a price of 100-3/64 for a total price of $1,000,468.75 plus accrued interest of $3,084.02. Such transaction was recorded on the books and records of GFC as a purchase by it of the Treasury certificates from petitioner and the account for petitioner was credited with the total price. On or about January 12, 1956, GFC advised ITC by letter to receive from *169 CTC $1,000,000 face amount of Treasury certificates by Federal Reserve wire transfer against payment of $965,000. On or about January 13, 1956, ITC advised GFC that on January 13, 1956, ITC had received $1,000,000 Treasury certificates from CTC through the Federal Reserve Bank for the account of GFC against payment of $965,000. On or about January 12, 1956, GFC sold the $1,000,000 face amount of Treasury certificates to Devine at 100-2/32 plus 1/64 for a total price of $1,000,781.25, plus accrued interest of $3,084.02. Such transaction was recorded on the books of Devine as a purchase. On or about January 13, 1956, ITC advised GFC that on January 13, 1956, ITC had delivered the said Treasury certificates to Devine and that payment had been received in the amount of $1,003,865.27. Such amount was credited to GFC's regular checking account. As a result of the aforesaid transaction, GFC repaid the $965,000 loan which it had received from CTC, and the $1,000,000 Treasury certificates which were held by CTC as collateral security were released to GFC. On or about January 17, 1956, GFC mailed an advice to petitioner stating that there was a balance in petitioner's account in the *170 amount of $3,240.27. On or about January 17, 1956, GFC mailed its check in the amount of $3,240.27 to petitioner representing the balance in the account. On or about January 17, 1956, GFC mailed an advice to petitioner reflecting a crediting of his account in the amount of $34,444.47 for a rebate of interest previously prepaid in accordance with the terms of the note. On the same day GFC mailed its check in the amount of $34,444.47 to petitioner. Such amount was recorded on GFC's books as a reduction in interest income recorded by it and credited to the special loan account. Petitioners reported in their 1956 joint income tax return a short-term capital gain in the amount of $156.25 arising out of the purchase and sale of the Treasury certificates. Petitioners also reported in their 1956 income tax return interest income in the amount of $35,763.34 consisting of (1) interest earned on the Treasury certificates from December 27, 1955, to January 13, 1956, in the amount of $1,319.27 [2] and (2) interest refunded from GFC in the amount of $34,444.07. The transactions engaged in by petitioner, referred *171 to herein, resulted in an out-of-pocket loss to petitioner (without regard to the tax consequences in issue) in the amount of $4,458.18. Petitioner's "out-of-pocket loss" incurred in connection with the $1,000,000 loan transaction is computed as follows: Interest paid
$37,777.77
Loan placement fee
2,500.00
Total
$40,277.77
Capital gains reported
$ 156.25
Interest on Treasury cer-
tificates
1,219.27
Interest refund
34,444.07
35,819.59
Net out-of-pocket loss
$ 4,458.18
Petitioner paid fees of $6,000 in 1955 to a certified public accountant (hereinafter referred to as the CPA), whom he retained for tax and financial advice. Such services were rendered to petitioner during the years 1954, 1955, and 1956. Upon being engaged by petitioner, the CPA initially addressed (1) the problem of safeguarding petitioner's claim to the sweepstakes winnings (hereinafter referred to as the winnings) and (2) the actual collection thereof. Prior to receipts of the winnings, the CPA made efforts to determine the potential tax consequences to petitioner resulting from such receipt. He also attempted to ascertain by what means such tax consequences could be alleviated. *172 The CPA filled out petitioner's tax returns for the year 1955. In his capacity as petitioner's investment counselor, the CPA investigated various investment possibilities, including oil royalties and real estate. He arranged to pay off petitioner's car loan and purchased mutual funds for petitioner. The CPA also advised petitioner on the $1,000,000 loan-Treasury certificate acquisition and arranged with GFC for petitioner to enter into such transaction. However, GFC rather than the CPA was the party responsible for arranging that transaction. Petitioners claimed as a deduction in their Federal joint income tax return for the year 1955 (1) an interest expense in the amount of $37,777.77 paid to GFC, (2) a loan placement fee in the amount of $2,500 paid to GFC, and (3) a $6,000 fee paid to a CPA for financial management and tax assistance. Respondent disallowed (1) the $37,777.77 paid to GFC on the grounds that it did not represent payments of interest on indebtedness within the meaning of section 163 (2) the $2,500 loan placement fee on the ground it did not represent an allowable deduction under any of the provisions of the Internal Revenue Code of 1954, and (3) the $6,000 fee *173 paid to a CPA to the extent of $5,000 for the reason that it did not represent an ordinary and necessary expense within the meaning of sections 161 and 212. Opinion The principal question to be decided in the instant case is whether the Commissioner erred in disallowing deductions for interest paid in 1955 on indebtedness. Section 163(a) of the Internal Revenue Code of 1954, applicable to the year involved herein, provides that in computing net income there shall be allowed as a deduction "all interest paid * * * within the taxable year on indebtedness." Respondent takes the position that petitioner is not entitled to a deduction of $37,777.77 in 1955 under section 163 or any other section of the Internal Revenue Code because the indebtedness upon which interest was paid was part of a sham transaction, devoid of commercial reality and its only end the obtaining of a tax deduction. Petitioner contends that the transaction in question was not lacking in substance or commercial reality and resulted in the creation of a valid, bona fide loan upon which interest was due and paid by petitioner and thereby deductible under section 163. We believe that this Court's *174 recent decision in Kapel Goldstein, 44 T.C. 284 (May 28, 1965), [3] is determinative of this issue and we therefore hold for respondent. In order to obtain the $1,000,000 loan, petitioner was required to pay GFC a $2,500 loan placement fee, in addition to interest at the rate of 4 percent per annum. GFC wanted this additional sum in order to make what it considered sufficient profit. Consequently, we believe that this issue also is controlled by Kapel Goldstein, supra, and, thus, we hold for respondent. During the years 1954, 1955, and 1956, petitioner retained the services of a CPA for tax and financial advice. In consideration of these services, petitioner paid said accountant $6,000 in 1955, which sum petitioner deducted in his income tax return for the same year. Respondent disallowed $5,000 of that deduction on the ground that such amount relates to the "Government bond" transaction. Regardless of any allocation which respondent may contend for, it is obvious from the record that the accountant's services consisted solely of financial and tax advice. Respondent does not contend otherwise. Amounts *175 expended for such purposes are properly deductible under section 212. Thus, we hold that the entire $6,000 fee paid to the CPA is deductible by petitioner. The final issue to be considered is whether petitioner, as an alternative to deducting $37,777.77 prepaid interest and $2,500 loan placement fee, can deduct in 1955 a net out-of-pocket loss in connection with the $1,000,000 loan transaction. [4]
Although petitioner's expenses were incurred and paid in 1955, the following amounts received in 1956 are clearly necessary to petitioner's net out-of-pocket loss computation, to wit: $156.25 capital gains; $1,219.27 interest on Treasury certificates; and $34,444.07 interest refund. Therefore, petitioner's net out-of-pocket loss could not possibly have been sustained in 1955 (the year involved herein) since the transaction generating such loss was not completed until the above amounts were received in *176 1956. Goodstein v. Commissioner, 267 F. 2d 127, 132 (C.A. 1, 1959), affirming 30 T.C. 1178 (1958). Thus, we hold for respondent on this issue. Decision will be entered under Rule 50. Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954.↩
2. The correct amount of interest on the Treasury certificates was $1,219.27.↩
3. See also Max Barnett, 44 T.C. - (May 28, 1965).↩
4. To be deductible, such item must qualify as a loss under section 165, I.R.C. 1954. SEC. 165. LOSSES. (a) General Rule. - There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise.↩