Michael J. **IPPOLITO** and Agnes Ippolito, Appellants,

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

No. 273, Docket 30150.

United States Court of Appeals Second Circuit.

Argued Feb. 23, 1966.

Decided July 22, 1966.

Bernard Speisman, New York City (Arnold Broser, of counsel), for appellants.

Jonathan S. Cohen, Atty., Dept. of Justice, Richard M. Roberts, Acting Asst. Atty. Gen., Lee A. Jackson, David O. Walter, Attys., Dept. of Justice, for respondent.

Before WATERMAN, MOORE and FRIENDLY, Circuit Judges.

WATERMAN, Circuit Judge:

Michael J. Ippolito, a cash method of accounting taxpayer, herein referred to as the petitioner, together with his wife who is a party only because the Ippolitos filed a joint return for the calendar year 1955, petition to review a decision of the Tax Court upholding the disallowance by the Commissioner of a claimed deduction for federal income tax purposes of a payment of $37,777.77 made by petitioner to Gibraltar Financial Corporation in December 1955, which payment petitioner claims was deductible as a payment of prepaid interest on indebtedness within Section 163(a) of the 1954 Internal Revenue Code. The Tax Court, relying on its May 28, 1965 opinion in Goldstein v. Commissioner, 44 T.C. 284 (5 Tax Court judges dissenting), aff'd this day, 364 F.2d 734 (2 Cir. 1966), and citing its May 28, 1965 opinion in Barnett v. Commissioner, 44 T.C. 261 (2 Tax Court judges dissenting) aff'd this day 364 F.2d 742 (2 Cir. 1966), disallowed the deduction in a memorandum opinion of June 24, 1965, as reported as T. C. Memo, 1965–167. We affirm the Tax Court.

The entire transaction between petitioner and Gibraltar was initiated and concluded within 25 days, from December 23, 1955 to January 17, 1956, and plainly showed at its inception that the transaction, except for its tax consequences, would inevitably result in a financial loss to petitioner.

During the year 1954 petitioner was the holder of an Irish Sweepstakes winning ticket, and, in 1955, collected $138,-567.50.

On or about December 23, 1955 petitioner purchased from Gibraltar $1,000,-000 face amount of U. S. Treasury Certificates 2⅝%, due December 1, 1956, at a price of 100.1. Petitioner paid Gibraltar a loan placement fee of $2,500 and paid Gibraltar $1,864.75 as margin on the purchase of the Treasury Certificates. Petitioner executed a note, with recourse, dated December 27, 1955, for $1,000,000 payable to Gibraltar, for the balance of the purchase price, bearing interest at the rate of 4% per annum and due December 1, 1956. On or before December 27, 1955, petitioner paid $37,777.77 to Gibraltar representing interest on the note for $1,000,000 to December 1, 1956, the maturity date of the note, and the date when the Treasury Certificates were due to be paid at face.

The promissory note provided, *inter alia:* (a) As security for the payment of the note, the petitioner pledged with Gibraltar the $1,000,000 face value of the Treasury Certificates; (b) Petitioner could prepay the principal sum of the loan at any time without penalty except that if prepayment occurred within 30 days from the date of the note, he would be liable for 30 days' interest thereon; (c) Petitioner gave Gibraltar, among

**746**

other things, the right to hypothecate and rehypothecate the Treasury Certificates.

On or about December 23, 1955 Gibraltar initiated a series of transactions between financial institutions, which began with its purchase of $1,000,000 face amount of Treasury Certificates from C. J. Devine & Co. on that day and ended with the purchase by C. J. Devine & Co. from Gibraltar of the Certificates on January 12, 1956. This series of transactions is detailed in the Tax Court's memorandum opinion and need not be again set forth in detail here.

In this way, the purported collateral, which of course petitioner never saw, having been sold, petitioner's note to Gibraltar was duly liquidated without any affirmative action being required of petitioner, and on or about January 17, 1956, Gibraltar informed petitioner that his account had been credited in the amount of $34,444.47 representing a rebate of interest previously prepaid in accordance with the terms of the note. On the same day Gibraltar mailed its $34,444.47 check to him.

Though the facts are carefully set forth by the Tax Court, the opinion in the present case is somewhat sketchy, presumably because the court in *Goldstein,* supra, and in *Barnett,* supra, decided by the court less than a month earlier, had in the opinions in those cases exhaustively discussed the same rationales of decision. The arrangement petitioner had with Gibraltar Financial Corporation differs in no significant respect from the arrangement Gibraltar had with *Barnett.* Although here the Tax Court did not explicitly find as an "ultimate fact," as it had found in *Barnett,* that the transaction between petitioner and Gibraltar had no purpose, utility, or substance apart from the tax consequences anticipated by petitioner, the facts the Tax Court did find fully warrant the same conclusion.

We affirm in this case on the ground that the nature of the arrangement between petitioner and Gibraltar (as dif-

ferentiated from the arrangement between Gibraltar and the various banks involved) and the extremely short duration of the transaction, justified the Tax Court's conclusion that the transaction entered into by petitioner, being devoid of commercial reality and having as its only conceivable purpose that of obtaining a large Section 163(a) deduction in 1955, was a "sham."

Affirmed.