LYLE H. VAN DYKE and MYRTLE E. VAN DYKE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Van Dyke v. Commissioner
Docket Nos. 2775-79, 12265-81.
United States Tax Court
T.C. Memo 1983-190; 1983 Tax Ct. Memo LEXIS 597; 45 T.C.M. (CCH) 1233; T.C.M. (RIA) 83190; April 6, 1983. Ronald H. Hoevet, for the petitioners. David M. Kirsch, for the respondent. FEATHERSTON
MEMORANDUM FINDINGS OF FACT AND OPINION FEATHERSTON, Judge: Respondent determined deficiencies in petitioners' Federal income taxes and additions to tax as follows: Addition to Tax
Sec. 6653(a),
Year
Deficiency
I.R.C. 1954
1975
$ 2,894.79
$ 144.74
1976
$12,050.30
$ 602.52
1977
$17,582.00
$1,018.60
1978
$33,339.00
$1,666.95
1979
$ 4,770.00
$ 238.50
After numerous concessions by both parties, the following issues remain for decision: 1. Whether petitioners are entitled to a deduction under section 212[1] in the amount of $3,000 for a payment made to Educational Scientific Publishers for a "family trust" package; 2. Whether payments made to Joan Gearon in 1979 for accounting services *599 are deductible under section 212(3); 3. Whether petitioners received only the sum of $20,004 in 1979 upon the sale of their airplane; 4. Whether petitioners are entitled to deductions for charitable contributions under section 170(a) for payments made in 1977 and 1978 to the Congregational Church of Human Morality; and 5. Whether petitioners are liable for all the years in question for additions to tax for negligence or intentional disregard of the tax laws within the meaning of section 6653(a). For simplicity, we shall combine our findings of fact and opinion for each issue. General Facts
At all times material herein, petitioners were legal residents of Portland, Oregon. For much of 1975 through 1979, petitioners were employed by Rest-A-Phone Corp., in Portland, Oregon; they also received income from "consulting fees" attributable to the John and Lorie Bridston Trust and the Educational Foundation of Knowledge, dividends, *600 interest, rental properties, and capital gains. From 1975 through 1977, petitioner Lyle Van Dyke (hereinafter petitioner) received fees from the sale of family trust packages. In 1975, petitioners established the Lyle H. Van Dyke Equity Trust (the trust) with trust materials provided by Educational Scientific Publishers (ESP). They now concede that the trust is ineffective for tax purposes. 1. Payment to ESP
In 1975, petitioners paid $3,000 to ESP for information concerning family trusts. Included in the information purchased was a "study manual" prepared for ESP by P. Marshall Boyls, an attorney, which described the tax benefits allegedly derived from family trusts. Petitioners argue that the $3,000 payment is deductible under section 212(3)[2] as tax planning advice, maintaining that the advice does not have to be correct in order to give rise to a deductible payment. See Collins v. Commissioner,54 T.C. 1656, 1666 (1970). 3[3]
*601 For a payment to be deductible under section 212(3), however, it is necessary that the advice sought pertain to tax matters. Petitioners testified that they went to Denver to seek "tax" advice from Mr. Boyls and Paul T. Wright, another attorney, and that such advice "cost" them $3,000. They submitted a copy of Mr. Boyl's "study manual," a 35-page document explaining the alleged legal bases and tax benefits of the "pure equity trust." Petitioner and his attorney in the instant case referred to this manual as "an opinion letter," but the document--bearing the legend "If you throw this in the wastebasket--put the wastebasket in the safe"--indicates that it was part of the trust package. Petitioner did not testify that Boyls or Wright drafted his own trust papers for him, and we are satisfied that they did not. Petitioners have not borne their burden of proving that respondent erred in denying the deduction under section 212(2) or (3). Rule 142(a); Welch v. Helvering,290 U.S. 111 (1933). The one document, referred to above, submitted to us--from which pages are missing--does *602 not convince us that it was the only material provided by ESP or that tax "advice" alone was procured with the $3,000 payment. We note that on petitioners' Form 1040 for 1975, the $3,000 deduction was listed as a miscellaneous deduction for "the Lyle H. Van Dyke Educational Trust (to Protect Assets)", with no mention of tax advice. A stipulation, moreover, indicates that the payment was made to ESP, not to Mr. Boyls or Mr. Wright. Petitioner testified that he sold trust "packages," and we infer that the $3,000 was paid for an entire trust "package," including numerous forms, and instructions for transferring property as well as "tax advice." Advice pertaining to general trust matters and the rearrangement of property is a nondeductible personal expenditure within the meaning of section 262. Epp v. Commissioner,78 T.C. 801, 805 (1982). In a situation where some tax advice and some other advice and materials are acquired with one lump payment, the most satisfying treatment may be to allocate a portion of the payment to the tax advice. To allow a deduction to an allocable part, however, petitioner must show both "that some part of an expenditure was made for deductible *603 purposes, and * * * [that] the record contains sufficient evidence for us to make a reasonable allocation * * *. Cohan v. Commissioner,39 F.2d 540 (2d Cir. 1930); Merians v. Commissioner, 60 T.C. [187] at 189-190 [1973]." Luman v. Commissioner,79 T.C. 846, 859 (1982). In the present case, we have no evidence as to what else petitioner acquired with his $3,000 payment. This "manual" may have been a major portion of the value received; it may have been mere surplusage. We have no way of telling. An allocation of any portion of the $3,000 to tax advice would be purely speculative, amounting to "unguided largesse." Williams v. United States,245 F.2d 559, 560 (5th Cir. 1957); Luman v. Commissioner,supra at 859; Epp v. Commissioner,supra at 807. Petitioner has failed to prove entitlement to any deduction under section 212(3). 2. Payments Made to Joan Gearon
Petitioners paid to Joan Gearon a total of $400 in 1979 for accounting services. These services related to advice in bookkeeping for determining tax liability and the preparation of income tax returns. *604 Respondent contends that this sum, concededly spent for accounting services, is not deductible, being "governed by the same principles" as the $3,000 payment to ESP and that "the essential nature of the payments is personal, therefore nondeductible. Code sec. 262." We disagree. Joan Gearon was not shown to be connected with the creation of the family trust. Moreover, the payment to ESP was disallowed because, although a portion of it may have involved tax advice, some indeterminate part of the payment related to personal matters such as rearranging title to property, drafting deeds and bills of sale, and setting up the trust, and the latter expenses are nondeductible. Expenses paid or incurred in connection with the determination of any tax, however, are deductible regardless of their personal nature. Section 212(3) and its regulations expressly permit deductions for expenses paid by a taxpayer in connection with the preparation of his personal tax returns. Sec. 1.212-1(1), Income Tax Regs. Petitioners have borne their burden of proof and the deduction is allowed. *605 Rule 142(a). 3. Amount Received Upon Sale of Airplane
During parts of 1978 and 1979, petitioner owned a Cessna C-320 airplane which he used in an airplane charter business. The airplane cost $45,000 when petitioner bought it in April 1978 and in October 1979 its adjusted basis was $39,342. Because of his own physical problems and the physical deterioration of the airplane, petitioner sold the airplane in October 1979 to a company named Delta II, located in Wyoming. From the proceeds of the sale he satisfied the purchase money loan balance of $20,004 owing to First of Fort Worth Bank, Fort Worth, Texas (the bank) by sending the bank five cashier's checks totaling $20,004. The parties agree that the airplane was sold in 1979 and that any loss resulting from the sale is an ordinary loss. The only controversy concerns the amount petitioner received on the sale. Petitioners state that they received exactly $20,004, the amount owing the bank. Respondent asserts that petitioners have not borne their burden of proving that they received only $20,004 and no more. As both parties agree, resolution of this issue depends upon petitioner's credibility. We find incredible *606 his statement that he received exactly $20,004. We note that he dealt in cash, apparently made no bank deposit, paid the bank in five cashier's checks, and produced no objective evidence as to the total proceeds. While he obtained from the bank a copy of a letter he wrote accompanying the cashier's checks, he has submitted no such evidence corroborating his testimony as to the sale price of the airplane. We are compelled to conclude that his testimony is insufficient to carry his burden of proof. We recognize that the airplane may have decreased in value to some extent while he owned it. Yet we have no way of knowing how much it deteriorated or whether any such deterioration affected its sale price. In view of the absence of documentation of the sale, any effort on our part to estimate the amount of petitioner's loss, if any, on disposition of the airplane would be conjecture. 4. Charitable Contributions
Petitioners made payments to the Congregational Church of Human Morality in 1977 and 1978 in the amounts of $6,600 and $17,870, respectively. They claim deductions as charitable contributions for these amounts. *607 In order for a contribution to be deductible under section 170(a), [4] the recipient must meet the requirements of section 170(c). Section 170(c) prescribes that the donee be "organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes" and that "no part of the net earnings of which inures to the benefit of any private shareholder or individual." Sec. 170(c)(2)(B) and (C). Petitioner testified that he knew a certain Reverend Bryan, allegedly linked with the church, who was organizing a wrestling program designed to aid young people. This statement falls far short of showing that the Congregational Church of Human Morality was organized and operated exclusively for exempt purposes and that no private inurement of benefit resulted. Until recently, a mere declaration that a "contribution" was made to a "church" was almost sufficient to qualify the contribution for deduction. The cynical abuse of the church concept for tax purposes in recent years, however, has made it necessary for this Court to insist on proof that the recipient of contributions qualifies under section 170(c). Petitioners have failed to carry their burden of proof, *608 Rule 142, and we sustain respondent's denial of the deduction. 5. Addition to Tax for Negligence
Petitioners have the burden of proving that they are not liable for additions to tax for negligence or intentional disregard of the tax laws within the meaning of section 6653(a). Welch v. Helvering,supra;Rule 142(a). They have failed to do so. [5] They argue that they relied on the advice of counsel, at least in establishing the trust. While good faith reliance on the advice of competent counsel may in some circumstances negate a charge of negligence, petitioners have not shown that their reliance on the "advice" of Mr. Boyls and Mr. Wright in setting up the trust was in good faith. *609 See Henry Schwartz Corp. v. Commissioner,60 T.C. 728 (1973). We note, moreover, that Mr. Boyls was suspended for one year from the practice of law because of his involvement with ESP in aiding nonlawyers in the unauthorized practice of law, People, ex rel. MacFarlane v. Boyls,197 Colo. 242, 591 P.2d 1315 (1979); he was also suspended from further practice before this Court by order dated July 13, 1979. Vercio v. Commissioner,73 T.C. 1246, 1248, fn. 2 (1980). We are convinced that petitioners knew full well the abusive nature (which they have now conceded) of their scheme when they entered it and as they persevered with it. Their actions must, at a minimum, constitute negligence or intentional disregard of the law. See Vnuk v. Commissioner,621 F.2d 1318, 1321 (8th Cir. 1980), affg. a Memorandum Opinion of this Court; secs. 6653(b), 6673, 7201, 7206(c); Hanson v. Commissioner,696 F.2d 1232 (9th Cir. 1983), affg. per curiam a Memorandum Opinion of this Court. *610 To reflect the foregoing. Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as in effect during the tax years in issue, unless otherwise noted. All Rules references are to the Tax Court Rules of Practice and Procedure, unless otherwise noted.↩
2. SEC. 212. EXPENSES FOR PRODUCTION OF INCOME. In the case of an individual, there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year-- (3) in connection with the determination, collection, or refund of any tax. Petitioners make no argument under sec. 212(2). See Epp v. Commissioner,78 T.C. 801, 805↩ (1982). 3. See also Ippolito v. Commissioner,T.C. Memo. 1965-167, affd. on other issues 364 F.2d 744↩ (2d Cir. 1966).
4. SEC. 170. CHARITABLE, ETC., CONTRIBUTIONS AND GIFTS. (a) Allowance of Deduction.-- (1) General rule.--There shall be allowed as a deduction any charitable contribution (as defined in subsection (c)) payment of which is made within the taxable year. A charitable contribution shall be allowable as a deduction only if verified under regulations prescribed by the Secretary.↩
5. Petitioners argue on brief that respondent must specify alleged acts of negligence on which he bases his determination, citing Kilborn v. Commissioner,29 T.C. 102, 111 (1957), affd. in part and revd. in part on other issues 1958-2 USTC par. 9847, 2 AFTR2d 5812 (5th Cir. 1958), revd. sub nom. United States v. Hine Pontiac,360 U.S. 715 (1959). Petitioners' reliance on Kilborn is misplaced. In Kilborn,↩ the petitioner assumed that the negligence addition to tax was imposed because of his treatment of one item. He sufficiently rebutted any negligence regarding that item. Because the respondent did not argue at trial or on brief that negligence was attributable to any other cause, and apparently the record did not reveal any other negligent acts, the Court held that the addition to tax was not applicable. There is no basis in the present case for shifting the burden of proof.