George R. SHIPPY, George Shippy, Jr.,
Wilda Shippy, Harold Shippy, and
Deloris Shippy, Plaintiffs,

v.

UNITED STATES of America,
Defendant.

Civ. No. 797 W.D.

United States District Court
D. South Dakota, W. D.

Dec. 6, 1961.

Robert C. Heege, of Davenport, Evans, Hurwitz & Smith, Sioux Falls, S. D., appeared in behalf of plaintiffs.

Stephen H. Anderson, Dept. of Justice, Washington, D. C., appeared in behalf of the defendant (Harold C. Doyle, U. S. Dist. Atty., for the District of South Dakota, Sioux Falls, S. D., was with him on the brief).

MICKELSON, Chief Judge.

Plaintiffs George R. Shippy, George Shippy, Jr., and Harold Shippy operate as a partnership a cattle and hog feeding business near Colome, South Dakota, and report their income for each calendar year on the cash receipts and disbursements basis. Plaintiffs do not raise cattle, but same are purchased by them, fed, and then sold. Not having the facilities to grow a great amount of feed, plaintiffs purchase most of the feed they use.

At the trial of this case before the court sitting without a jury, it was established that on December 28, 1957, the partnership issued a check for $23,-000.00 to a grain elevator operator for feed, to be delivered in the future as needed by the partnership in its feeding

operations. No written agreement was entered into between the parties, although the partnership did receive a written receipt, and the elevator operator testified that he considered the payment to be in the nature of an advance deposit for future sales of feed. Feed was then supplied to the partnership from time to time at the price in effect on the date of each delivery until the entire $23,000.00 credit was exhausted in July of 1958.

On its 1957 Federal Income Tax Return, the partnership deducted the $23,-000.00 deposited with the elevator as a business expense, with the result that the individual tax returns of each partner reflected a lower taxable income for that year. The Commissioner disallowed the deduction and assessed deficiencies against each of the partners in the total amount of $5492.80, which they paid under protest, and for the recovery of which this action is brought. The only question before the court is whether the $23,000.00 deposit was properly deducted in 1957, or whether, as the Commissioner contends, it should have been deducted in 1958.

■ As a general rule, a taxpayer using the cash receipts and disbursements method must take a deduction for a business expense in the year in which such expense is paid. 26 C.F.R. 1.461–1(a) (1); Heublein v. Commissioner of Internal Revenue, 233 F.2d 426 (2nd Cir., 1956). However, the rule is otherwise where the expenditure for which the deduction is claimed creates an asset having a useful life extending substantially beyond the close of the taxable year, 26 C.F.R. 1.461–1(a) (1), and where such an overlapping item would materially distort true income, 26 C.F.R. 1.461–1 (a) (3) (i). In the present case, the expenditure in question established the partnership's credit with the elevator which covered purchases of feed from the date of the deposit into the month of July of the following year—"substantially beyond the close of the taxable year," in the language of the regulation. Furthermore, there can be no doubt that the

deduction resulted in a material distortion of the partnership income. Except for this deduction, the partnership net income for 1957 would have been $38,-024.77. The deduction in question had the effect of reducing the partnership net income to $15,024.77.

The regulations cited, and the conclusion to which they bring us, are entirely in accord with the following provision of the Internal Revenue Code, which states:

"There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business * * *." 26 U.S.C.A. § 162(a).

The record shows that this $23,000.00 deposit was the largest single payment for feed ever made by the Shippy partnership—almost triple the amount of any previous single payment. It is further noted that on all previous occasions, the partnership had paid for feed on or after delivery—never in advance. Hence, this large advance deposit for future delivery of feed could hardly be termed "ordinary." Neither was it "necessary." The reasons advanced by the partnership as to the necessity of the advance deposit are not convincing. There was no shortage of feed. Advance payment was not and never had been demanded by the elevator. The elevator's commission paid by the partnership was the same as it had always paid, and the advance deposit assured it of no preferential treatment it could not have had without such deposit.

The arrangement made between the partnership and the elevator was not a contract. It was an advance deposit for future purchases of feed. We do not believe that Congress intended that taxpayers should be allowed to "juggle" their tax liability in this manner.

Taxpayers rely heavily upon Cravens v. Commissioner of Internal Revenue, 272 F.2d 895 (10 Cir., 1959); Ernst v. Commissioner, 32 T.C. 181 (1959); and Waldheim Realty & Inv. Co. v. Commis-

844

sioner of Internal Revenue, 245 F.2d 823 (8 Cir., 1957). In Cravens v. Commissioner of Internal Revenue, supra, the taxpayer was an Oklahoma cattle raiser who had encountered severe drought problems and was faced with the prospect of being forced to dispose of his herd and go out of business. In December of 1953, Cravens made a deal with a feed supplier whereby he would receive "preferential treatment" in return for his advance payment of $50,000.00 to the supplier. The Tenth Circuit Court of Appeals held that this expense was deductible in 1953. In doing so, however, that court stressed the fact that the taxpayer was faced with an emergency situation and that the advance payment was necessary to enable the taxpayer to stay in business. Furthermore, in Cravens, a binding contract had been entered into by which the taxpayer secured an advantage not otherwise obtainable.

Except for the drought conditions, much the same situation was present in Ernst v. Commissioner of Internal Revenue, supra, where the Tax Court allowed a taxpayer to deduct an advance payment for feed. As in Cravens, however, a binding contract had been entered into, and the taxpayer " * * * was irretrievably out of pocket the amounts paid * * * *" The court emphasized that the payments were not in the nature of deposits which might be refunded, and that " *. *. * the allowance of the deductions * * * would more clearly reflect his income than their disallowance * * * *"

In Waldheim Realty & Inv. Co. v. Commissioner of Internal Revenue, supra, advance payments of insurance premiums were held to be deductible in the year in which paid. But in that case, the taxpayer had made a practice of paying such premiums in advance, thereby establishing a regular pattern of long standing so that the deduction in the year in which paid did not distort income.

■ Taxpayers also cite South Dakota Code provisions to show that a binding contract was entered into. However, the tax statutes, not local law, determine the deductibility of an expense, Baltimore Dairy Lunch v. United States, 231 F.2d 870, 875 (8 Cir., 1956), and cases cited, and we disagree with taxpayers that the transaction involved in this case constituted a binding contract.

The testimony and the inferences to be drawn therefrom negative the existence of a contract. It appears that the partnership could have asked for and received a refund of any or all of its unused credit at any time before such credit was exhausted. The tax motive is admitted by taxpayers. The elevator operator testified that he did not consider the transaction to be in the nature of a present purchase of feed. The $23,000.-00 payment was a mere deposit to cover future purchases. In this respect, the money was not actually "paid" in 1957. Neither, of course, was the expense "incurred." Having already determined that the payment was neither "ordinary" nor "necessary," the basic requirements of an allowable business expense, as set forth at 26 U.S.C.A. § 162(a), are not met.

■■ Income tax deductions are matters of legislative grace, Deputy v. DuPont, 308 U.S. 488, 493, 60 S.Ct. 363, 84 L.Ed. 416 (1940), and provisions therefor are to be strictly construed against the taxpayer, Helvering v. Northwest Steel Rolling Mills, 311 U.S. 46, 49, 61 S.Ct. 109, 85 L.Ed. 29 (1940). The Commissioner's ruling is presumptively correct, and the taxpayers have the burden of proving it wrong, Welch v. Helvering, 290 U.S. 111, 115, 54 S.Ct. 8, 78 L.Ed. 212 (1933). In this case, taxpayers have not been able to bring themselves within the provisions of the statute and regulations defining allowable deductions.

This memorandum decision shall constitute the Court's Findings of Fact and Conclusions of Law.

Counsel for the United States of America will prepare and submit a judgment dismissing plaintiffs' complaint upon its merits, and with prejudice, with allowable costs to be taxed against the plaintiffs.