Max BARNETT and Esther Barnett, Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 272, Docket 30149.

United States Court of Appeals Second Circuit.

Argued Feb. 23, 1966.

Decided July 22, 1966.

Bernard. Speisman,, New York City (Arnold Broser, of counsel), for appellants.

Jonathan S. Cohen, Atty., Dept. of Justice, Richard M. Roberts, Acting Asst. Atty. Gen., Lee A. Jackson, David O. Walter, Attys., Dept. of Justice, for respondent.

Before WATERMAN, MOORE and FRIENDLY, Circuit Judges.

PER CURIAM:

Max Barnett, the petitioner herein, and his wife who is a party only because the spouses filed a joint income tax return for the calendar year 1957, petition to review a decision of the Tax Court upholding the action of the Commissioner of Internal Revenue in disallowing a deduction for federal income tax purposes of a payment of $30,850.49 made by petitioner to Gibraltar Financial Corporation on December 26, 1957, which petitioner, a taxpayer reporting on the cash accounting method, claims was a payment of interest on indebtedness within Section 163(a) of the 1954 Internal Revenue Code. In a careful opinion detailing all the pertinent facts, many of which had been stipulated, the Tax Court held that this payment was not deductible because the loan transaction had no substance apart from its anticipated tax consequences and was a "sham" that created no real indebtedness. Barnett v. Commissioner, 44 T.C. 261 (1965) We affirm.

In 1957 petitioner received $50,000 as a prize for winning a newspaper contest, and this case arises out of a plan for reducing petitioner's 1957 income taxes by taking a deduction for the alleged payment in December of that year of $30,850.49 as claimed prepaid interest on a loan to finance the purchase of $750,000 of U. S. Treasury obligations. This plan is similar to, but significantly more transparent than, the plan devised by the taxpayer and her advisors in Goldstein v. Commissioner of Internal Revenue, 364 F.2d 734 (2 Cir. 1966), also decided today. In this case, as in Goldstein, the Tax Court concluded on the basis of sufficient evidence that the petitioner could not have expected to realize a profit on the transaction and that the transac-

tion had no purpose, utility, or substance apart from the tax consequences petitioner anticipated it would have. It follows from what we said in *Goldstein* that the Tax Court's disallowance of the deduction must be affirmed. See 364 F.2d at 740.[1]

Moreover, in the present case, unlike the situation in *Goldstein*, the nature of the diaphanous arrangement between petitioner and Gibraltar (as differentiated from the arrangement between Gibraltar and the various financial institutions Gibraltar involved in its financial "round robin"), plus the extremely short duration of the loan transaction,[2] lead us without peradventure of doubt to conclude that the Tax Court was correct in determining that the purported loan transaction here was indeed without substance and was a "sham" of the discredited Goodstein variety. Goodstein v. Commissioner, 267 F.2d 127 (1 Cir. 1959), affirming 30 T.C. 1178 (1958). And see 4 Mertens, Law of Federal Income Taxation, § 26.04a (1960 Revision and Supplements).

We affirm on this ground as well as on the other grounds the Tax Court so ably and exhaustively advanced.

---

[1]. We point out, as we did in *Goldstein*, that our discussion of a taxpayer's tax avoidance motives is only pertinent to Section 163(a). We do not hold that the existence of a tax avoidance motive, standing alone, is always, or even usually, sufficient to disallow a taxpayer the tax consequences he hopes for when he enters into a transaction. We here hold that Congress did not "intend" Section 163(a) to be utilized by taxpayers who are motivated to borrow funds for no other reason than to obtain a Section 163(a) deduction. Section 163(a) does not "intend" that a deduction be allowed in such a case. See Knetsch v. United States, 364 U.S. 361, 365, 81 S.Ct. 132, 5 L.Ed.2d 128 (1960) ; Goldstein v. Commissioner of Internal Revenue, 364 F.2d 734 (2 Cir. 1966).

[2]. On December 26, 1957, petitioner paid Gibraltar $30,850.49 as "prepaid interest" for nine months at the rate of 5½% on the principal sum of $747,890.63 which, with other monies, was to be used to acquire $750,000 of 3¾% Treasury certificates at a very slight premium over face. Gibraltar made purchases and sales so that by January 20, 1958 taxpayer's "sham obligation" to it was fully paid. Gibraltar paid petitioner $9,140.89 on January 3, 1958 and $18,282.17 on January 20, 1958, representing a refund of $27,423.06 in calendar 1958 of the "prepaid interest" of $30,850.49 paid in calendar 1957.