ANDREW A. SANDOR AND JEANNE SANDOR, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 7791-72. Filed July 3, 1974.

---

*Robert D. Alban*, for the petitioners.

*George McDonald*, for the respondent.

DRENNEN, *Judge:* Respondent determined a deficiency in petitioners' income tax for the year 1968 in the amount of $27,090.

Petitioners accounted for their income on the cash basis. The deficiency determined by respondent in the notice of deficiency resulted from the disallowance of a deduction for prepaid interest in the amount of $38,021 and disallowance of part of a claimed loss from a partnership. The partnership loss issue has been conceded by petitioner and is not before the Court. The reason stated for disallowance of the prepaid interest deduction was that it was "not allowable under section 446 since such deduction would materially distort taxable income for 1968."

In their petition petitioners allege as error the disallowance of the deduction for interest and also "The question of the legality of Revenue Ruling 68–643." In his answer respondent simply denied that he had erred as alleged in the petition. The parties stipulated that the issues remaining for the Court's determination are:

(1) Whether petitioners' deduction of 5 years' prepaid interest should be disallowed pursuant to Rev. Rul. 68–643, 1968–2 C.B. 76.

(2) Whether Rev. Rul. 68–643 was a proper exercise of the rule-making authority of the Commissioner.

The parties directed their arguments on brief primarily toward the issues as posed in the stipulation, and we will approach the issues on the same basis, keeping in mind, however, that what we are called upon to decide is whether petitioners may deduct the prepaid interest in 1968 under the law, rather than the abstract question of whether Rev. Rul. 68–643 is valid.

## FINDINGS OF FACT

Certain facts have been stipulated and are found accordingly.

Petitioners Andrew A. Sandor and Jeanne Sandor are husband and wife. The petitioners resided in Corona Del Mar, Calif., when the petition herein was filed. They filed a joint Federal income tax return for the taxable year 1968 on the cash method of accounting. Jeanne Sandor is a party solely because she signed the joint return; therefore, Andrew A. Sandor will be referred to as petitioner.

Andrew A. Sandor is a doctor of medicine who specializes in an eye, ear, nose, and throat practice. Besides his medical practice, petitioner was also extremely active in the stock market; he entered buy-and-sell transactions on a daily basis. As a result of this concentrated investment activity, petitioner was eventually forced to curtail his medical practice so he could devote more time to his investment activities. Finally, petitioner reached the point where he was dividing his

time equally between his medical practice and his investment activities. Petitioner's tax return for 1968 showed, under the schedule for capital gains and losses, that he entered into approximately 1,500 stock transactions during that year. Petitioner's activity in the stock market was quite profitable in 1968; on his tax return for that year he reported net short-term capital gains from market activities in the amount of $198,829.87 and net long-term capital gains in the amount of $104,166.48.

Petitioner has on numerous occasions borrowed money to help finance his various market activities. He has obtained in excess of 50 loans from the Manufacturers Bank in Los Angeles over the years, and at one time had a line of credit with that bank in the amount of $100,000. The first loan transaction between the petitioner and that bank occurred sometime in 1963.

Manufacturers Bank (hereinafter referred to as the bank) was founded in 1962, and the petitioner was one of its initial shareholders. All of petitioner's dealings with the Manufacturers Bank were through Ronald Hicks. Hicks has been a vice president and commercial loan officer with Manufacturers Bank since its founding in 1962.

Sometime prior to November 26, 1968, petitioner contacted Hicks by telephone concerning a $100,000 loan. It was standard procedure for petitioner to telephone Hicks when he wanted to obtain a loan. Hicks had aided petitioner in obtaining all his loans from Manufacturers Bank, and, therefore, Hicks was well aware that petitioner used the funds for the purpose of entering into stock transactions.

During this telephone conversation, Hicks gave an oral commitment on behalf of the bank for the $100,000 loan to petitioner. The only terms of the loan that were discussed were the amount, $100,000; the duration of the loan, established as 5 years; the rate of interest on the loan; and an understanding that petitioner would prepay in 1968 the entire 5 years of interest. The securities which petitioner purchased with the borrowed funds would constitute the collateral for the loan. However, since petitioner had not chosen the actual securities at the time of this telephone conversation, the parties did not reach an actual agreement that securities purchased with the borrowed funds would be sufficient collateral until sometime subsequent to this initial conversation.

After the oral commitment from Hicks, petitioner commenced investigating possible investments by sending for various mutual fund prospectuses. He reviewed these materials for 4 to 6 weeks and finally selected the Smith Barney Equity Fund, Inc., and the First Multifund of America, Inc., as the two funds in which he intended to invest.

On December 16, 1968, Hicks initialed a standard loan approval form used by Manufacturers Bank authorizing the processing of a loan

to petitioner in the principal amount of $100,000 at 7½-percent interest. According to this form, the loan was payable on demand or in 5 years; however, the interest on the note was to be prepaid and a minimum of 90 days' interest was guaranteed. The approval form also required the guarantee of petitioner's wife, stock powers of the First Multifund of America, Inc., and of Smith Barney Equity Fund, Inc., as collateral for the loan, and a request for a current financial statement from petitioner.

Thereafter, petitioner executed a promissory note to the bank in the amount of $100,000 which was dated December 31, 1968, and interest on the note started on that date. The note was payable on demand or, if no demand was made, then 5 years after the date of the note. The entire interest, which was at a rate of 7½ percent per annum, was payable in advance. Petitioner paid the interest for the entire 5-year term of the note in the amount of $38,041.61 by a personal check to Manufacturers Bank, dated December 27, 1968. A notation on this check stated "Prepay interest on loan."

It was normal procedure in loan transactions between petitioner and the bank for the bank to mail the necessary papers to petitioner. None of the paperwork for this loan was executed until December 1968. After the loan approval form was initialed by Hicks on December 16, 1968, it was delivered to the loan processers, and they typed the necessary documents and prepared them for the borrower's signature. Petitioners signed what was sent to them by the bank and returned the documents to the bank.

The bank never loaned funds unless a promissory note and additional documents were signed by the borrower. Petitioner never received a loan from Manufacturers Bank without having to sign a promissory note. Had petitioner advised the bank that he did not want the loan at any time prior to the time petitioners executed the note, the bank would have done nothing to force him to take it. If petitioner prepaid the principal of the note at any time prior to its due date, the bank would refund to him the unearned portion of the prepaid interest, except for a minimum of 90 days' interest. The bank considered the prepaid interest as additional collateral to assure repayment of the loan.

By an authorization dated December 19, 1968, petitioner authorized the Manufacturers Bank to forward cashier's checks in the amount of $50,000 each to the Bank of New York and to the Chase Manhattan Bank. Pursuant to this authorization, Manufacturers Bank executed a cashier's check to Chase Manhattan Bank, custodian for First Multifund of America, Inc., in the amount of $50,000, dated December 31, 1968, and a cashier's check to the Bank of New York in the amount of $50,000, dated December 31, 1968. The Chase Manhattan Bank

purchased $50,000 in shares of First Multifund of America, Inc., for petitioner's account, and the Bank of New York purchased $50,000 in shares of the Smith Barney Equity Fund, Inc., for petitioner's account. First Multifund of America, Inc., confirmed petitioner's purchase of $50,000 worth of its shares by a receipt dated January 6, 1969. Similarly, Smith Barney Equity Fund, Inc., confirmed petitioner's purchase of $50,000 worth of its shares by a receipt dated January 8, 1969.

On their income tax return for 1968 petitioners deducted a total of $38,359 for interest paid to Manufacturers Bank, which included the $38,041.61 paid on December 27, 1968, in connection with this transaction. Respondent disallowed $38,021 of the claimed deduction.[1]

OPINION

The issue for decision is whether petitioners, who reported income on the cash method of accounting, may deduct in the year of payment, 1968, the entire amount of interest that would accrue on a $100,000 loan extending over a 5-year period starting December 31, 1968. Petitioner prepaid the interest at the inception of the loan and claimed a deduction for the entire amount in 1968 under section 163,[2] I.R.C. 1954.[3] Respondent, relying on his authority under section 446, disallowed the deduction on the ground that it would distort petitioners' income; he would allow petitioners to allocate the interest over the 5-year period and deduct each year the amount of interest allocable to that year.

Section 163 provides, with exceptions and limitations not relevant here, "There shall be allowed as a deduction all interest paid or accrued within the taxable year on indebtedness." As stated by the Second Circuit in *Goldstein* v. *Commissioner*, 364 F. 2d 734 (C.A. 2, 1966), affirming 44 T.C. 284 (1965), the underlying purpose of section 163(a) is difficult to articulate because this provision is extremely broad; there is no specific requirement that deductible interest serve a business purpose, that it be ordinary and necessary, or even that it be reasonable.

At the outset, we find that this case is not controlled by numerous cases which have involved the deductibility of interest in transactions contrived in such a manner that the only economic benefit that could be realized by the taxpayer was the benefit derived from the interest

---

[1] There is no explanation in the record of the difference between the $38,041.61 petitioner paid the bank and the $38,021 disallowed in the notice of deficiency.

[2] SEC. 163. INTEREST.

(a) GENERAL RULE.—There shall be allowed as a deduction all interest paid or accrued within the taxable year on indebtedness.

[3] All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.

deduction, such as *Knetsch* v. *United States*, 364 U.S. 361 (1960); *Bridges* v. *Commissioner*, 325 F. 2d 180 (C.A. 4, 1963), affirming 39 T.C. 1064 (1963); *Max Barnett*, 44 T.C. 261 (1965), affd. 364 F. 2d 742 (C.A. 2, 1966). Those cases have held that the transactions were shams and did not give rise to any true indebtedness; therefore, there could be no deduction for interest paid on indebtedness. Nor do we find this case to be controlled by cases such as the Second Circuit characterized the *Goldstein* case, involving loan arrangements that cannot with reason be said to have purpose, substance, or utility apart from their anticipated tax consequences. We find that the transaction here involved had economic reality, gave rise to a true indebtedness from petitioner to the bank, and that the amounts here involved were paid as interest on that indebtedness. We also find, however, that the only reason the interest for the full 5-year period was prepaid in 1968 was to give the taxpayer the benefit of a large deduction for interest in a year in which his income was quite high.

In *John D. Fackler*, 39 B.T.A. 395 (1939), the Board of Tax Appeals allowed deductions of prepaid interest that were motivated by sound business reasons. And in *Court Holding Co.*, 2 T.C. 531 (1943), the Tax Court also allowed deductions for prepaid interest, relying almost entirely on the *Fackler* case for its conclusion. Apparently as a result of these cases, respondent, in 1945, issued I.T. 3740, 1945 C.B. 109, which stated that a cash basis taxpayer may deduct interest paid in advance for a period of 5 years in the year in which paid, but that an accrual basis taxpayer could deduct prepaid interest only in the year in which the liability to pay accrues irrespective of when payment was actually made.

I.T. 3740 gave rise to numerous schemes designed primarily for the purpose of engendering a tax deduction for prepaid interest.[4] The courts were required to grapple with a number of cases arising out of this use of the interest deduction and used a variety of approaches to usually disallow the deduction where they found that the purported payment of interest had no economic reality except to obtain a tax advantage. Some of the reasons used to deny the deduction were that the transaction was a sham giving rise to no true indebtedness, *Bridges* v. *Commissioner*, *supra*; that interest paid in arrangements that have no purpose or substance apart from their anticipated tax consequences is not deductible, *Goldstein* v. *Commissioner*, *supra*; and that the prepaid interest was not actually paid in the year the deduction was claimed but was more in the form of a deposit, *Kenneth D. LaCroix*,

---

[4] See excellent discussion of prepaid interest in article by Professor Michael Asimow, "Principle and Prepaid Interest," 16 U.C.L.A. L. Rev. 36.

61 T.C. 471 (1974).[5] Most of these cases were decided on the particular facts involved and hence did not provide a solution to the difficult problem of what to do about the deductibility of prepaid interest which was in fact a payment for the use or forbearance of money. Consequently, in 1968, the Commissioner revoked his prior ruling and issued Rev. Rul. 68–643, 1968–2 C.B. 76, stating his reconsidered position with respect to prepaid interest. This ruling is based on the Commissioner's authority under section 446(b) to change the method of accounting for a particular item when that item distorts income under the method of accounting then being used by the taxpayer.

Respondent's current position with respect to prepaid interest, as stated in Rev. Rul. 68–643 which is quoted in full in the footnote,[6] is that, with regard to cash basis taxpayers, a deduction for interest paid in advance on indebtedness for a period not in excess of 12 months of the taxable year immediately following the taxable year in which the prepayment is made will be considered on a case-by-case basis to determine whether a material distortion of income has resulted; but that if interest is prepaid for a period extending more than 12 months beyond the year of prepayment, the deduction of such prepaid interest in the year of payment will be considered as materially distorting income.

---

[5] It has also been suggested that prepaid interest might be considered to be an intangible asset with a life of more than 1 year and must be capitalized and amortized over the life of the loan. Asimow, "Principle and Prepaid Interest," *supra*. Since this theory has not been argued, we see no need to discuss it in this opinion. However, it does provide a means of justifying the deduction of aliquot portions of the prepaid interest in subsequent years by a cash basis taxpayer. See *Julia Stow Lovejoy*, 18 B.T.A. 1179 (1930); *Commissioner v. Boylston Market Assn.*, 131 F. 2d 966 (C.A. 1, 1942).

[6] SECTION 163.—INTEREST

26 CFR 1.163–1: Interest deduction in general.                              Rev. Rul. 68–643
(Also Sections 446, 7805; 1.446–1, 301.7805–1.)

Reconsideration has been given to I.T. 3740, C.B. 1945, 109, concerning the question whether interest paid in advance is deductible for Federal income tax purposes for the year in which paid.

I.T. 3740 was based upon a transaction in which the taxpayer paid interest in advance for a period of five years. As to such transaction, I.T. 3740 holds that where a taxpayer keeps books of account and files Federal income tax returns on the cash receipts and disbursements method of accounting, interest paid in advance for a period of 5 years is deductible for the year in which paid, but where the accrual method of accounting is used in reporting income, interest is deductible for the year in which the liability to pay accrues irrespective of when payment is actually made.

Section 163 of the Internal Revenue Code of 1954 provides, in general, that there shall be allowed as a deduction all interest paid or accrued within the taxable year on indebtedness.

Section 446(a) of the Code provides that taxable income shall be computed under the *method of accounting on the basis of which the taxpayer regularly computes his income* in keeping his books. Section 446(b) of the Code provides, in part, that if the method used does not clearly reflect income, the computation of taxable income shall be made under such method as, in the opinion of the Secretary or his delegate, does clearly reflect income.

As to taxpayers employing the accrual method of accounting, consistent with the position stated in I.T. 3740, interest accrues ratably over the period of the loan and is allowable as a deduction ratably over this period, irrespective of when paid.

In view of certain abuses which have arisen with respect to prepayment of interest by

476

An analysis of the numerous cases that have been decided since the promulgation of I.T. 3740, involving various schemes to use prepaid interest to obtain large deductions for interest in advance of the year for which the liability accrues, and the legislative history of sections 163, 446, and 461 of the 1954 Code convince us that the underlying philosophy of Rev. Rul. 68–643 represents a commendable effort on the part of the Internal Revenue Service to provide some certainty with respect to the deductibility of prepaid interest which is justified under section 446 to prevent the distortion of income. We also doubt that the *Fackler* and *Court Holding Co.* cases should be relied on as precedents under the present state of the law.

Petitioner contends that the Commissioner abused his discretion under section 446 (b) when he issued Rev. Rul. 68–643, *supra*. There are several broadly stated principles of law that are often recited when a question arises concerning the use of section 446 (b) by the Commissioner. Although a reassertion of those principles might appear to be a bit redundant, it is essential that we review them in order to determine whether the Commissioner overstepped his authority in disallowing a deduction for the prepaid interest in this case and/or by issuing Rev. Rul. 68–643.

The Commissioner has broad powers and discretion to determine

---

taxpayers **using** the cash receipts and disbursements method of accounting, the Service has reexamined its position in I.T. 3740. The Service now concludes that the deduction of prepaid interest in the year of payment by a taxpayer employing the cash receipts and disbursements method of accounting may not result in a clear reflection of income for the taxable year of payment. A deduction for interest paid in advance on each indebtedness for a period not in excess of 12 months of the taxable year immediately following the taxable year in which the prepayment is made will be considered on a case by case basis to determine whether a material distortion of income has resulted. Some of the factors to be considered in determining whether the deduction of prepaid interest gives rise to a material distortion of income include but are not limited to the amount of income in the taxable year of payment, the income of previous taxable years, the amount of prepaid interest, the time of payment, the reason for prepayment, and the existence of a varying rate of interest over the term of the loan. If interest is prepaid for a period extending more than 12 months beyond the end of the current taxable year, the deduction of such prepaid interest in the taxable year of payment will be considered as materially distorting income. Where a material distortion of income has been found to result from the deduction of prepaid interest, the Service will require the taxpayer to change his method of accounting with respect to such prepaid interest in order to allocate it over the taxable years involved.

In view of the foregoing, I.T. 3740 is revoked. However, pursuant to the authority contained in section 7805(b) of the Code, this Revenue Ruling will be applied without retroactive effect to interest prepayments for periods not in excess of five years made prior to November 26, 1968 by taxpayers employing the cash receipts and disbursements method of accounting. This Revenue Ruling also will be applied without retroactive effect to an interest prepayment for a period not in excess of five years made on or after November 26, 1968, by a taxpayer employing the cash receipts and disbursements method of accounting, pursuant to a legal obligation incurred prior to such date to make such prepayment.

The Service will no longer follow the contrary decisions in *John D. Fackler v. Commissioner*, 39 B.T.A. 395 (1939), acquiescence, C.B. 1939–1 (Part I), 11, and *Court Holding Co. v. Commissioner*, 2 T.C. 531 (1943), acquiescence, C.B. 1943, 5. Acquiescence in each of those court decisions is being withdrawn and nonacquiescence substituted therefor. See Page 3, this Bulletin.

whether accounting methods employed by a taxpayer clearly reflect income. *Commissioner* v. *Hansen*, 360 U.S. 446 (1959); *Fort Howard Paper Co.*, 49 T.C. 275 (1967); *Photo-Sonics, Inc.*, 42 T.C. 926 (1964), affd. 357 F. 2d 656 (C.A. 9, 1966). Courts will not overturn the Commissioner's determination unless the evidence clearly shows that he abused his discretion. *Schram* v. *United States*, 118 F. 2d 541 (C.A. 6, 1941); *Michael Drazen*, 34 T.C. 1070 (1960). The taxpayer has a heavy burden of proof in establishing that the Commissioner abused his discretion. *Fort Howard Paper Co., supra; Photo-Sonics, Inc., supra.* Even if an accounting method may be in accord with generally accepted accounting principles, it may not clearly reflect income and, therefore, may not be binding upon the Commissioner. *American Automobile Assn.* v. *United States*, 367 U.S. 687 (1961); *Fort Howard Paper Co., supra.*

In reliance upon the powers granted him under section 446(b), the Commissioner, in Rev. Rul. 68–643, determined that cash basis taxpayers should be placed on the accrual method of accounting with respect to interest prepaid for a period extending more than 12 months beyond the end of the current taxable year. In effect, the Commissioner would place such taxpayers on a hybrid method of accounting. Section 446(c) (4) permits the use of hybrid methods of accounting, which indicates that Congress thought a hybrid method may clearly reflect income. Consequently, requiring a taxpayer to adopt a hybrid accounting method is not an abuse of the Commissioner's discretion. Furthermore, section 1.446–1(a), Income Tax Regs., states: "The term 'method of accounting' includes not only the over-all method of accounting of the taxpayer but also the accounting treatment of any item." See also *Fruehauf Trailer Co.*, 42 T.C. 83 (1964); *Peoples Bank & Trust Co.*, 50 T.C. 750 (1968), affd. 415 F. 2d 1341 (C.A. 7, 1969).

Petitioner argues that section 163(a) provides in general that there shall be allowed as a deduction all interest paid or accrued within the taxable year on indebtedness and, citing *L. Lee Stanton*, 34 T.C. 1 (1960), the maxim of interpretation "inclusio unius est exclusio alterius" applies, i.e., Congress intended no other exception or limitation on the deductibility of interest on indebtedness except those specifically mentioned in the law. We think petitioner's reliance on *Stanton* and the maxim relied on therein is misplaced. In *Stanton* the only issue facing the Court was whether the amounts claimed actually represented interest and no issue was raised whether a deduction for prepaid interest could be disallowed if it distorted income.

Respondent insists that section 163 must be read in the light of sections 446 and 461. We agree that section 163 should be subject to the scrutiny of sections 446 and 461. As was said in *Gregory* v. *Helvering*, 293 U.S. 465, 469 (1935), and relied on in *Knetsch* v. *United States*,

*supra,* "the question for determination is whether what was done, apart from the tax motive, was the thing which the statute intended." When scrutinized in the light of the legislative history of the above provisions of the Code, we do not believe Congress intended that a deduction for prepaid interest be allowed when such allowance would result in a distortion of the taxable income for the year of payment.

Section 200(d) of the Revenue Act of 1924, the progenitor of section 43 of the 1939 Code and section 461 of the 1954 Code, stated:

(d) * * * The deductions and credits provided for in this title shall be taken for the taxable year in which "paid or accrued" or "paid or incurred", dependent upon the method of accounting upon the basis of which the net income is computed under section 212 or 232, unless in order to clearly reflect the income the deductions or credits should be taken as of a different period.

In commenting on this provision, the House Ways and Means Committee stated:

In subdivision (d) of this section authority is granted to the Commissioner to allow or require deductions and credits to be taken as of a year other than that in which "paid" or "accrued" when, in his opinion, it is necessary in order to clearly reflect the income. The Revenue Act of 1921 in sections 214(a)(6) and 234(a)(4) authorizes the Commissioner to allow the deduction of losses in a year other than that in which sustained when, in his opinion, it is necessary to clearly reflect the income. The proposed bill extends that theory to all deductions and credits. The necessity for such a provision arises in cases in which a taxpayer pays in one year interest or rental payments or other items for a period of years. If he is forced to deduct the amount in the year in which paid, it may result in a distortion of his income which will cause him to pay either more or less taxes than he properly should. [H. Rept. No. 179, 68th Cong., 1st Sess., pp. 10–11 (1924).]

Section 200(d) became section 43 of the 1939 Code, and section 43 was the predecessor of section 461(a)[7] of the 1954 Code, except that section 461(a) did not include the clause "unless in order to clearly reflect the income, the deductions or credits should be taken as of a different period."

However, both the House and Senate committee reports, which used identical language, stated:

Section 461 adopts the provisions of section 43 of the 1939 Code in rearranged form. The timing of deductions and credits otherwise allowable is determined by the taxpayer's method of accounting. *The method must clearly reflect the income of the taxpayer.* [Emphasis added; H. Rept. No. 1337, 83d Cong., 2d Sess., p. A161 (1954) ; S. Rept. No. 1622, 83d Cong., 2d Sess., p. 305 (1954).]

It seems obvious from the committee reports that Congress, despite the deletion of the "unless" clause, intended that the timing of the

---

[7] SEC. 461. GENERAL RULE FOR TAXABLE YEAR OF DEDUCTION.

(a) GENERAL RULE.—The amount of any deduction or credit allowed by this subtitle shall be taken for the taxable year which is the proper taxable year under the method of accounting used in computing taxable income.

deductions would continue to be subject to the requirement that the method of accounting for that deduction should clearly reflect income.

In *Security Mills Co.* v. *Commissioner*, 321 U.S. 281 (1944), the Supreme Court, in discussing the purpose of the "unless" clause as it appeared in section 43 of the 1939 Code, cited and relied on the House and Senate committee reports of 1924. The Court stated that under the "unless" clause:

a tenant would not be compelled to accrue, in the first year of a lease, the rental liability covering the entire term *nor would he be permitted, if he saw fit to pay all the rent in advance,* to deduct the whole payment as an expense of the current year. * * * [Emphasis added; 321 U.S. at 285.]

In this discussion the Supreme Court employed one of the two examples contained in the House and Senate committee reports of 1924. The other example was prepaid interest. Since the Supreme Court relied on these committee reports and even cited their example of prepaid rent, there is no reason to doubt that the Court also accepted the right of the Commissioner to disallow a deduction for prepaid interest on the basis that it did not clearly reflect income.

Furthermore, legislative history also lends some support to the particular revenue ruling we have under consideration. Subsequent to the issuance of Rev. Rul. 68–643, the House Ways and Means Committee specifically commented upon this ruling, in H. Rept. No. 91–413, 91st Cong., 1st Sess., p. 73 (1969). It stated, inter alia:

Your committee's attention was also called to the matter of deductions for prepaid interest. On November 26, 1968, the Internal Revenue Service issued a ruling which held that any payment for prepaid interest which would materially distort income, if deducted in the year in which paid, should not be allowed to a cash basis taxpayer for that year but should be allowed only on the accrual basis. This ruling is in accord with the treatment given other prepayments of expenses and is in accord with your committee's concept of the law. Thus, it does not seem necessary to include a provision in the bill to deal with this problem.

Of course, while the committee report is not a binding statement of the law, it is, nevertheless, instructive as to the committee's concept of the existing law, and does tend to lend credence to the Commissioner's position embodied in Rev. Rul. 68–643.

In light of the foregoing legislative history, we think that the Commissioner, in dealing with the issue of prepaid interest through the mechanism of section 446(b), acted appropriately and within the scope of his authority.

In addition, the treatment of other analogous prepayment items by the courts and the Commissioner can be somewhat instructive. A prepayment item that is closely analogous to prepaid interest, throughout the long history of prepaid items, is the prepayment of rentals. In

*University Properties, Inc.*, 45 T.C. 416, 421 (1966), affd. 378 F. 2d 83 (C.A. 9, 1967), we observed:

Rentals may be deducted as such only for the year or years to which they are applied. If they are paid for the continued use of the property beyond the years in which paid they are not deductible in full in the year paid but must be deducted ratably over the years during which the property is so used. * * *

We think that the parallel between prepaid rent and prepaid interest is inescapable. The fact that rental payments are deductible under section 162, whereas interest payments are deductible under section 163, is of little moment. The underlying theory which makes prepayments of rent not immediately deductible is equally applicable to prepaid interest—i.e., the likelihood that the deduction will result in a material distortion of income.

As we indicated earlier, we think petitioners' reliance on the two early cases of this Court, *John D. Fackler, supra*, and *Court Holding Co., supra*, is misplaced under the present state of the law. In *Fackler*, the taxpayer, who was on the cash basis, paid interest of $46,900 in 1934, $6,000 of which was attributable to 1935, and $2,300 to 1936. The taxpayer had a business purpose for the prepayment which was to transform a demand note into a time note that could not be called during the period for which interest was prepaid. Similarly, in 1935, the taxpayer prepaid $6,600 interest which related to 1936, but, again, there was a business purpose, because the prepayment secured a reduction in the interest rate from 5 percent to 3 percent. The Board of Tax Appeals, in allowing the deduction of the prepaid interest, relied on *Welch* v. *De Blois*, 94 F. 2d 842 (C.A. 1, 1938), in which the Court of Appeals for the First Circuit held that insurance premiums which were prepaid by a cash basis taxpayer were deductible in the year of payment. The precedential value of *Welch* v. *De Blois, supra*, was subsequently destroyed when the First Circuit specifically rejected its original position in that case and held that deductions for prepaid insurance premiums should be allocated over the period of time the policy is in effect. *Commissioner* v. *Boylston Market Assn.*, 131 F. 2d 966 (C.A. 1, 1942). In light of the *Boylston Market* case, the portion of the *Fackler* decision which is based on the reasoning in *Welch* v. *De Blois, supra*, was undermined.

The Board, in *Fackler*, put forth an additional argument in support of its proposition that prepaid interest by a cash basis taxpayer should be deductible in the year of payment. The Board stated:

The effect of denying it [immediate deduction of prepaid interest] here would be to place petitioner on an accrual basis as to one item on his return and leave him on a cash basis as to the remainder. Such inconsistency is not permissible. * * * [39 B.T.A. at 399.]

This was based on the theory that a hybrid method of accounting was not allowable. As previously demonstrated, the 1954 Code permits a hybrid method of accounting and, therefore, the Commissioner can require a hybrid method if it will clearly reflect the taxpayer's income.

Petitioners also cite the recent District Court case, *Cattle Feeders Tax Committee* v. *Shultz* (W.D. Okla. 1973, 33 A.F.T.R. 2d 74–428),[8] in which the court enjoined the Internal Revenue Service from publishing and enforcing Rev. Rul. 73–530, which apparently stated that in order for farmers and cattlemen, who use the cash basis of accounting, to deduct in the year of payment the cost of feed which is to be consumed in a year subsequent to the year of payment, they must meet a three-part test, one part of which requires that the deduction of such feed cost in the year of payment must not result in a material distortion of income. The opinion of the court in that case consists only of conclusions of law based on the narrow issue concerning the method of accounting in the cattle industry. We do not know the reasons for its decision and would hesitate to draw any universally applicable legal principles therefrom.

In this case we have found that the only reason petitioner agreed to prepay the 5 years' interest on his loan was to use the deduction to reduce his taxable income and hence his income tax. While we recognize that a taxpayer may decrease his taxes by means which the law permits, *Gregory* v. *Helvering, supra,* we believe this right is subject to the right of the Commissioner under section 446 to change the taxpayer's method of accounting with respect to a material item in order to clearly reflect income. We agree with respondent that the deduction of 5 years of prepaid interest by petitioners in 1968 would distort their income. Since none of the prepaid interest here involved was allocable to the year 1968, there is no prevailing reason that a deduction for any of it should be allowed in that year.

While we have indicated that respondent's Rev. Rul. 68–643 would not be an abuse of his authority if applied in this case, we do not intend to place a stamp of approval on everything said in the ruling or on the application of that ruling to all cases. We do not believe it is required of us to determine the validity or invalidity of the revenue ruling in toto. The purpose of the publication of revenue rulings is to publish the official interpretation of the Revenue Service of certain laws as applied to certain circumstances in order to promote uniform application of the tax laws by Service employees and to advise taxpayers of the official Service position. They do not have the force and effect of Treasury Department Regulations but are pub-

---

[8] Judgment and order stayed until further order of C.A. 10, 33 A.F.T.R. 2d 74–526 (Dec. 13, 1973).

lished to provide precedents to be used in the disposition of other cases. They are not binding on the courts. See Statement of Principles of Internal Revenue Tax Administration in current Internal Revenue Bulletins; *United States* v. *Hall*, 398 F. 2d 383 (C.A. 8, 1968) ; *Stubbs, Overbeck & Associates* v. *United States*, 445 F. 2d 1142 (C.A. 5, 1971).

We agree that the allowance of a deduction of 5 years of prepaid interest in this case would distort income, but we are not prepared to say that a deduction of any prepaid interest extending beyond a period of 12 months following the year of payment would distort income under all circumstances and justify changing a taxpayer's method of accounting with respect to the prepaid interest item. This would be ruling in advance of any knowledge of the facts and circumstances. We believe the Revenue Service may be called upon to support its determinations in some such cases.

It can also be argued that petitioners are not entitled to a deduction for the prepaid interest even on a cash method of accounting for the item.

A close analysis of the transaction here involved and the testimony of both Hicks and Sandor cast doubt on whether the amount Sandor paid the bank in 1968, which was labeled "prepaid interest," was actually interest *paid* in 1968, insofar as petitioner was concerned.[9] Hicks testified that the unearned portion of the interest was refundable to Sandor any time the balance of the principal was paid. While the record does not reveal whether the principal was prepaid, an analysis of Sandor's securities transactions would make it reasonable to assume that the likelihood was good that he would sell the mutual fund shares in less than 5 years and prepay the loan. Hicks also testified that the bank considered the interest prepaid as additional security for the loan and a bonus on the interest rate because the bank had the use of the $38,041.61 until such time as it might have to refund a part of it. It would be quite plausible to consider the prepaid interest as a *deposit* to be applied as interest when earned in the future, rather than a payment of interest in 1968. This approach has been used in denying deductions of prepayments for cattle feed in several cases. See *R. D. Cravens*, 30 T.C. 903 (1958), revd., however, 272 F. 2d 895 (C.A. 10, 1959) ; *Shippy* v. *United States*, 199 F. Supp. 842 (D.S.D. 1961), affd. 308 F. 2d 743 (C.A. 8, 1962) ; *Tim W. Lillie*, 45 T.C. 54 (1965), affd. 370 F. 2d 562 (C.A. 9, 1966). But also see *John Ernst*, 32 T.C. 181 (1959), in which this Court allowed a deduction for feed to be delivered in the next year because taxpayer had a consistent pattern of doing this, and it did not result in a distortion of income.

---

[9] We make no suggestions on the effect, if any, the application of the "deposit" theory to the borrower would have on the lender for tax purposes.

This Court also held that a prepayment of interest was in fact a deposit and not interest paid on indebtedness in the year of payment in the very recent case of *Kenneth D. LaCroix, supra,* but that was because the "prepaid interest" was to be credited on principal from time to time, so that case is not controlling here.

In *United States* v. *Consolidated Edison Co.,* 366 U.S. 380, 391 (1961), the Supreme Court noted:

"Payment" is not a talismanic word. It may have many meanings depending on the sense and context in which it is used. As correctly observed by the Court of Appeals, "A payment may constitute a capital expenditure, an exchange of assets, a prepaid expense, *a deposit,* or a current expense" * * *.

That principle may well be applied in determining whether a purported *prepayment* of interest is actually a *payment* of interest in the year of prepayment where the circumstances warrant, as we think they do in this case. The application of the deposit to interest as it is earned and the allowance of a deduction in the year of application gives a result consistent with respondent's Rev. Rul. 68–643, and in this case, at least, would more clearly reflect income.

Petitioner argues that Rev. Rul. 68–643 is not applicable to this transaction because by its terms it was not to be applied retroactively. Having determined, independently of Rev. Rul. 68–643, that respondent did not abuse his discretion in requiring petitioners to account for the prepaid interest in the years to which it is applicable and in disallowing the deduction for 1968, we need not determine whether Rev. Rul. 68–643 is applicable to this transaction. However, since the parties have asked us to do so, and because respondent would probably not have questioned this deduction under I.T. 3740, we have examined the issue.

The prepaid interest involved was actually delivered to the bank after November 26, 1968, the effective date of the ruling. But the ruling also provides that it will not be applied to prepaid interest payments made after November 26, 1968, pursuant to a legal obligation incurred prior to such date. Petitioners argue that they had a binding obligation to prepay 5 years' interest on the loan prior to November 26, 1968. The evidence does not support their argument.

The only activity that took place before November 26 with respect to the loan was a telephone conversation between Sandor and Hicks to make preliminary arrangements for the loan. We do not doubt that terms of the loan were discussed, particularly the prepayment of interest, because it is our impression that that was the principal reason for Sandor entering into the transaction. But we doubt that there was agreement as to all of the terms of the loan, such as the collateral to be used to secure the loan. It is clear that Sandor had not even started looking into what he was going to purchase with the proceeds of the

loan until after the telephone conversation. There is no evidence that either party intended the telephone conversation to give rise to a binding contract.

Hicks did not officially authorize the loan until after November 26; none of the documents were prepared or signed until after that date; the borrowed money was not used by Sandor until after that date; and it was specifically provided in the final agreement that interest would not start to run until December 31, 1968. Hicks apparently made no record of a loan until about December 16, and he testified that had Sandor wanted out of the transaction he could have gotten out anytime prior to the transfer of the funds and the signing of the note. We are convinced from all the evidence that there was at most a commitment in general terms on the part of Hicks to make a loan to Sandor if he wanted it, but that Sandor had no binding obligation to prepay the interest until after November 26, 1968.

We see no need to delve into the California law of contracts to determine whether the parties entered into a binding contract prior to November 26, 1968. It is enough to note that the California courts recognize that preliminary negotiations leading up to the execution of a contract do not constitute a binding contract. There must be a meeting of the minds on all the material terms of an agreement before it can ripen into a contract. *Dillingham* v. *Dahlgren*, 52 Cal. App. 322, 198 Pac. 832 (1st Dist. Ct. App. 1921); *Roberts* v. *Adams*, 164 Cal. App. 312, 330 P. 2d 900 (2d Dist. Ct. App. 1958). Whether the parties were merely negotiating a contract or entering into a binding contract is a question of intention. *Carter* v. *Milestone*, 170 Cal. App. 189, 338 P. 2d 569 (2d Dist. Ct. App. 1959). This is a question of fact to be determined by the Court from all the evidence. We have reached the conclusion that neither Hicks nor Sandor intended the telephone conversation to create a binding contract and neither of them thought it did.

Petitioner also argues that the doctrine of promissory estoppel could have been invoked to require the bank to loan the money to petitioner. We disagree. Petitioner did nothing in reliance on the telephone conversation except start looking for investments. His position was not changed to his detriment until long after November 26, 1968. *Van Hook* v. *Southern California Waiters Alliance*, 158 Cal. App. 2d 556, 323 P. 2d 212 (2d Dist. Ct. App. 1958).

We, therefore, conclude that the nonretroactive provisions of Rev. Rul. 68–643 did not exclude the transaction here involved from its applicability.

Reviewed by the Court.

*Decision will be entered for the respondent.*