DON PAUL SETLIFF, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Setliff v. Commissioner
Docket No. 37635-85.
United States Tax Court
T.C. Memo 1987-330; 1987 Tax Ct. Memo LEXIS 330; 53 T.C.M. (CCH) 1295; T.C.M. (RIA) 87330; July 1, 1987. Don Paul Setliff, pro se. David A. Hampel, for the respondent. PETERSON
MEMORANDUM FINDING OF FACT AND OPINION PETERSON, Special Trial Judge: This case was heard pursuant to the provisions of section 7456(d) [1] (redesignated as section 7443A(b) by the Tax Reform Act of 1986, Pub. L. 99-514, section 1556, 100 Stat. 2755) and Rules 180, 181 and 183. [2]
Respondent determined deficiencies in petitioner's Federal income taxes as follows: Taxable year
Deficiency
1979
$1,681.75 1980
1,568.91
1981
3,500.00
Respondent also determined that the entire amounts *332 of such deficiencies are "substantial underpayments" attributable to "tax motivated transactions" and are thus subject to the increased interest rate prescribed by section 6621(c). [3] Respondent concedes that due to mathematical errors made in the notices of deficiency a recomputation of the deficiencies under Rule 155 will be necessary in the event we hold for respondent herein. The issues for decision in this case are: (1) whether petitioner is entitled to his distributive share of partnership losses to the extent it is based on interest expense accrued by the partnership in accordance with the Rule of 78's and, if we hold for respondent on this issue, (2) whether the resulting underpayments are attributable to "tax motivated transactions" subject to the increased interest rate pursuant to section 6621(c). FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulations of fact and attached exhibits are incorporated herein by this reference. At the time the petition was filed in this case Don Paul Setliff (petitioner) resided *333 in Del Mar, California. Skull Creek Apartments, Ltd. (sometimes hereinafter referred to as the "partnership") is an Arkansas limited partnership formed during 1978 for the purposes of owning and operating the Skull Creek Apartments located in Fayetteville, Arkansas. IEI Realty, Inc. [4] (IEI) and Realty Consultants, Inc. (RCI) are corporations organized under Arkansas law. F.L.I. Properties, Inc. (FLI) is a Nevada corporation organized on April 14, 1978. IEI, RCI and FLI were at all times relevant to this controversy owned and controlled by David R. Kane (Kane). IEI was the sole general partner of Skull Creek Apartments, Ltd. from the partnership's inception through December of 1982. On or about May 31, 1978, RCI, acting as agent for FLI, purchased the Skull Creek Apartments and certain nearby land (hereinafter collectively referred to as the "apartments") from unrelated third parties for a sum of $1,944,000. In satisfaction of the purchase price RCI paid $300,000 in cash and executed a promissory *334 note (sometimes hereinafter referred to as the "underlying note") in favor of the seller of the apartments in the amount of $1,644,000. The promissory note provided for interest at 8 percent per annum with principal and interest amortized over a period of 360 months in equal monthly installments of $12,063.67. The note was with full recourse to RCI and was secured by the property, evidenced by a Deed of Trust executed May 31, 1978. In a simultaneous transaction RCI assigned all of its right, title and interest in the apartments to FLI and FLI assumed the above note. The assignment was executed for both parties by Kane in his capacity as president of both RCI and FLI. Skull Creek Apartments, Ltd. was initially formed with one general partner, IEI, and fifteen limited partners. The total capital contribution of the limited partners was $600,100. IEI contributed $1,000, and received a 5 percent interest in profits and losses of the partnership. The remaining 95 percent interest was owned by the limited partners. Petitioner's capital contribution was $40,000, representing a 6.33 percent interest in Skull Creek Apartments, Ltd. The partnership used the calendar year for its annual *335 accounting period and reported its income and deductions on the accrual basis for Federal income tax purposes. On May 31, 1978, the partnership purchased the apartments from FLI for $2,135,000, consisting of $10,000 in cash and a $2,125,000 wraparound promissory note (the "wrap note"). In addition, the partnership paid FLI $466,000 in "prepaid interest," to be applied ratably to the first 132 monthly payments under the wrap note in the amount of $3,522.07 per month. The wrap note was executed by Kane as president of IEI in its capacity as general partner, and was secured by a "Purchase Money Wrap-Around Mortgage" (the "wrap mortgage") on the property, also dated May 31, 1978. The wrap note was nonrecourse and provided for interest at 8 percent per annum with principal and interest amortized over a period of 30 years in 360 equal monthly installments of $15,592.50. The wrap note provided, however, that interest was to be allocated using the "Rule of 78." It states, in pertinent part: Interest on this Note shall be computed in accordance with the Rule of 78 (sum of the month's digits method) and, accordingly, shall accrue each month in an amount determined by multiplying Three *336 Million Four Hundred Eighty-eight Thousand Two Hundred Ninety-eight and 98/100 Dollars ($3,488,298.98) (which is the aggregate interest due over the full term of the Note) by a fraction of which the numerator shall be Three Hundred Sixty (360) minus the number of payments made to date and the denominator shall be Sixty Four Thousand Nine Hundred Eighty (64,980); and the product thereof shall be the interest which shall be applied against the monthly payment and the difference between said product and $15,592.50 shall be applied to principal, and in the event the interest so determined is greater than the total monthly payment due, the unpaid interest shall be added to the principal balance of this Note. Interest was not charged under the wrap note on amounts added to the principal balance pursuant to the Rule of 78's, i.e., months in which the actual monthly payment of $15,592.50 was less than the interest charge calculated under the Rule of 78's. Amortization of the wrap note under the Rule of 78's resulted in principal balance increases through payment no. 70, when the principal balance exceeded $2,256,000. The principal balance of the wrap note thereafter declined with each *337 successive payment made, and would have become less than the original face amount of such note ($2,125,000) with payment no. 141 had it not been satisfied prior to such payment. The wrap note prohibited prepayment at any time prior to the 133rd payment or August 1, 1989, after which prepayment was permitted, in whole or in part, without a premium or penalty. The wrap note and wrap mortgage further provided that they were to be governed by Nevada law. During 1982 IEI, RCI and a number of other entities owned and controlled by Kane went into bankruptcy. Among the entities in bankruptcy was FLI's parent corporation. At a meeting of the limited partners during December 1982 petitioner was elected to succeed IEI as the general partner. During January 1985 the partnership sold the apartments to unrelated parties for a stated price of $2,600,000. At such time, First South Savings and Loan of Pine Bluff, Arkansas held the wrap note as collateral for a loan it had previously made to FLI. As a condition of the sale of the apartments, the buyers required that the wrap note be paid and that FLI's secured interest in the property be released. The buyers agreed, as part of the transaction, *338 to assume the original note executed by RCI. At the time of such sale the difference between the remaining principal balance of the wrap note and that of the original note was approximately $725,000. The buyers agreed to pay $260,000 in satisfaction of the outstanding principal balance of the wrap note. The $260,000 figure was calculated as the net present value of the remaining payments due over the remaining term of the wrap note. [5] The effect of the Rule of 78's with respect to such note was ignored. During 1979, 1980 and 1981, the partnership accrued interest expense under the wrap note using the Rule of 78's. Petitioner deducted his distributive share of such interest expense on his Federal income tax returns for such years. Respondent disallowed the interest deductions in the notices of deficiency to the extent they exceed the economic accrual of interest under the wrap note. Respondent based such disallowances upon his determination that the Rule of 78's is not an acceptable method of computing interest since "it is not a standard method used in the industry" *339 and "its use materially distorts income." OPINION Respondent's position in this case closely follows his position concerning the Rule of 78's as enunciated in his Rev. Rul. 83-84, 1983-1 C.B. 97. [6] The essence of respondent's position in Rev. Rul. 83-84 is that, in every case, use of the Rule of 78's (or any computation of interest not based upon application of the same effective rate of interest over the term of a loan) lacks economic substance and thus constitutes a material distortion of income. In the instant case respondent contends that the provision of the wrap note regarding use of the Rule of 78's did not reflect the economic reality of a true debtor-creditor relationship and was entered into solely for the purpose of accelerating interest deductions during the early years of the partnership's operations. Respondent further contends that use of this method to compute interest expense results in a material distortion of income and is subject to recomputation by the Commissioner under section 446(b). *340 Petitioner alleges, inter alia, that in the instant case use of the Rule of 78's had both business purpose and economic substance, and should, therefore, be accorded full effect for Federal income tax purposes. We find, however, that petitioner's contentions are not supported by the record. Based upon the evidence, we find that use of the Rule of 78's in the instant case lacked economic substance. However, for reasons given below, we need not, and do not, decide whether its use lacks economic substance as a matter of law. Further, as we shall explain below, we find it unnecessary to reach the material distortion of income issue. Section 163(a) allows a deduction for "all interest paid or accrued within the taxable year on indebtedness." Deductible interest must be paid or accrued for the use or forbearance of money. Deputy v. du Pont,308 U.S. 488, 497 (1940). It is axiomatic that an interest deduction is allowable only with respect to genuine indebtedness, and that for Federal *341 income tax purposes the economic substance of a transaction governs over the form in which it is cast. Knetsch v. United States,364 U.S. 361 (1960); Thompson v. Commissioner,631 F.2d 642 (9th Cir. 1980), affg. 66 T.C. 1024 (1976). Based upon this record we agree with respondent's position that the terms of the wrap note were not the result of arm's-length negotiation and, therefore, lacks economic substance. It is clear from the evidence that David Kane controlled the sale and purchase of the apartments between FLI and the partnership. Kane controlled IEI, the partnership's sole general partner, and it was he who executed the wrap note as well as all other documents pertaining to the transaction between FLI and the partnership. The "Offering Memorandum" with which the partnership investment was marketed to petitioner reveals that the terms of the transaction were unilaterally set "without any arm's-length negotiation." Where, as here, significant tax benefits are derived from a transaction between related parties, we will examine the terms of such transaction with a high level of scrutiny. As we stated in Derr v. Commissioner,77 T.C. 708 at 723 (1981). *342 Although "mere control alone" will not allow the form of a transaction to be disregarded, it indicates that the transaction was not made at arm's length. * * * Such an absence of arm's-length dealing requires us to consider whether the form and substance of the transaction were the same. [Citations omitted.] A means of establishing that the substance of a transaction comports with its form is to show some business purpose for the form in which the transaction took place. See Gregory v. Helvering,293 U.S. 465 (1935). In the instant case petitioner suggests that the Rule of 78's provision in the wrap note was a concession by the partnership to induce FLI to charge a below market (8 percent) interest rate over the life of the loan. However, we find no evidence in the record which would support such contention. We find petitioner's contention without merit in light of the fact that the partnership made a $466,000 interest prepayment to FLI clearly raising the effective rate *343 of interest paid by the partnership in connection with the transaction. [7]
The evidence shows that use of the Rule of 78's was merely a gimmick devised by Kane to increase interest deductions flowing from the transaction to prospective limited partners and, thus, to make the limited partnership interests more marketable. It is clear from the record that the Rule of 78's was never expected by the parties to come into play in an economic sense. Monthly payments under the wrap note were paid in accordance with the economic accrual of interest at 8 percent per annum, while interest in excess of such monthly payments (pursuant to computations under the Rule of 78's) was "added" to the principal balance of the wrap note. However, it is clear that the parties did not intend that such additional amounts of interest *344 would ever be paid, since the wrap note prohibited prepayment throughout most of the period during which its principal balance exceeded its face amount. Further, no interest was charged under the wrap note on such additions to principal and no additional principal payments were ever made. It is also clear that the additional principal balance would not have been paid by the partnership in the event of default on the wrap note since the note was nonrecourse. When the property was sold during 1985, the wrap note was satisfied in accordance with its economic worth for an amount substantially less than its principal balance. Moreover, even if the wrap note had actually run the course of its 30-year term, the partnership would never have been out of pocket at any point in time with respect to sums accrued in excess of economic interest. [8] It is clear, therefore, that the parties to the transaction had no intention of honoring the Rule of 78's provision under any circumstances except for tax purposes. *345 Where, as here, we have found that the questioned provision lacked economic substance, the transaction must be taxed in accordance with its true substance. Gregory v. Helvering,supra. On this record it is clear that the wrap note was in substance a 30-year note to be amortized by 360 equal monthly payments of $15,592.50 with the interest portion of each payment to be calculated at 8 percent on the unpaid principal balance. Having found that the provision in question lacked economic substance, we need not examine the material distortion of income issue as respondent urges. See, e.g., Sandor v. Commissioner,62 T.C. 469, 473, 474 (1974), affd. 536 F.2d 874 (9th Cir. 1976) (wherein we examined the material distortion of income issue with respect to prepaid interest only after finding that the transaction and the payments there involved had economic substance). [9] Further, we limit our finding on the economic substance of the use of the Rule of 78's to the facts herein, and find it unnecessary for the resolution of the instant case to *346 speculate as to its validity under differing circumstances.[10] Based upon the foregoing, we also need not reach other arguments presented by the parties. The final issue for our determination is the applicability in the instant case of section 6621(c), [11] which provides for an increased interest rate with respect to any "substantial underpayment" *347 (in excess of $1,000) attributable to one or more "tax motivated transactions." Sec. 6621(c)(2). Among the transactions enumerated in the statute as "tax motivated" is "any sham or fraudulent transaction." Sec. 6621(c)(3)(A)(v). Since we have held in the instant case that the only transaction in issue lacked economic substance, section 6621(c) is applicable to the extent there is a substantial underpayment of tax. See Patin v. Commissioner, 88 T.C.     (April 29, 1987) (slip opinion, pp. 61-63). The temporary regulations provide for the method of computing the additional interest under section 6621(c). Sec. 301.6621-2T, A-5, Proced. & Admin. Regs. (Temporary), T.D. 7998, 1985-1 C.B. 368, 49 Fed. Reg. 59394 (Dec. 28, 1984). Decision will be entered under Rule 155.
Footnotes
1. Statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated. ↩
2. All rule references are to the Tax Court Rules of Practice and Procedure.↩
3. Former sec. 6621(d) was redesignated as sec. 6621(c)↩ pursuant to sec. 1511(c), Tax Reform Act of 1986, 100 Stat. 2744.
4. There is evidence in the record suggesting that IEI Realty, Inc. is a Delaware corporation, but the parties have stipulated that it is an Arkansas corporation, and we so find.↩
5. It is not clear what rate of return was used in computing the net present value of such payments.↩
6. Rev. Rul. 83-84, 1983-1 C.B. 97, states in pertinent part: In general, the substance of a loan agreement is that the same rate of interest applies to each taxable year of the loan, regardless of any contrary formulas that may be stated in the agreement. * * * The Rule of 78's represents a purely mechanical formula for allocating interest among periods. Because interest is earned by application of the effective rate of interest over the term of the loan, any agreement that provides that interest is earned in another manner, such as under the Rule of 78's computation, lacks economic substance because it fails to reflect the true cost of borrowing. No tax effect will be given to the Rule of 78's provision. Accordingly, a taxpayer that uses the accrual method of accounting may deduct in each year the interest that economically accrues and may not deduct any additional interest attributable to the Rule of 78's computation. See Rev. Proc. 83-40, 1983-1 C.B. 774, which sets forth an exception to the application of Rev. Rul. 83-84, supra,↩ for interest on certain short-term consumer loans.
7. Respondent expressly does not attack the substance of the partnership's $466,000 prepayment of interest to FLI. Therefore, we do not examine the substance of such payment. Although its characterization as prepaid interest is not free of doubt, we nonetheless find it unnecessary to more closely analyze the true nature of such payment in resolving the issue before us.↩
8. We have also analyzed whether the partnership might be considered out of pocket during the negative amortization period of the wrap note to the extent of the unapplied balance of the partnership's $466,000 interest prepayment. However, we are unable to reach such a conclusion since, based upon this record, the partnership's $466,000 payment appears to be more in the nature of a down payment disguised as an interest prepayment, and provides yet more evidence of the tax-driven structuring of the transaction in question. As we stated in n. 6, supra,↩ however, the parties have not raised as an issue the substance of the $466,000 payment, and we make no finding with respect to it.
9. See also Mortensen v. Commissioner,T.C. Memo. 1984-600↩. 10. Specifically, we note that this case does not involve a situation where the parties to a loan agree at arm's length to use the Rule of 78's, and where the surrounding circumstances indicate that the parties intend to honor such provision at the time they enter into the loan agreement. We also note that in adding the economic performance test to sec. 461, (sec. 461(h) was added by sec. 91(a), Tax Reform Act of 1984, 98 Stat. 494, 598) Congress expressly intended no inference with respect to the propriety of the principles enunciated in Rev. Rul. 83-84, 1983-1 C.B. 97↩. See H. Rept. 98-861 at 875 (1984), 1984-3 C.B. (Vol. 2) 129.
11. See n. 3, supra.↩