WARING PRODUCTS CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 55622. Filed March 12, 1957.

Fred R. Tansill, Esq., and Edward J. Mooney, Esq., for the petitioner.

John M. Doukas, Esq., for the respondent.

**OPINION.**

Raum, *Judge:* 1. The Commissioner disallowed a deduction in the amount of $82,702.47, which petitioner claims to be allowable as engineering and designing expenses. A small part of these expenses pertained to the manufacture of the Blendor; the great bulk of the item represents costs incurred in connection with the unsuccessful effort to manufacture the iron. The Commissioner has conceded that these costs are not to be capitalized, nor does he contest the amount. His sole argument is that the deduction is not available because petitioner "was not legally obligated" to turn over to Air-Way $37,907.23 worth of steam iron tools or to pay $44,796.24 for engineering and designing costs, the two components of the amount in dispute.

We think that there is no merit to respondent's position. We know of no requirement that there must be an underlying legal obligation to make an expenditure before it can qualify as an "ordinary and necessary" business expense under section 23 (a) (1), Internal Revenue Code of 1939. The basic question is whether, in all the circumstances, the expenditure is ordinary and appropriate to the conduct of the taxpayer's business. Unlike the situation in *Welch* v. *Helvering*, 290 U. S. 111, relied upon by respondent, no part of the amount involved represents a gratuitous payment. Certainly, as to the $44,796.24 item, the payment was for engineering services rendered to petitioner; and, as to the $37,907.23 item, the transfer of tools in that amount was, in part at least, in satisfaction of Air-Way's con-

tested claim for reimbursement for costs incurred in connection with the production of the irons. We hold for petitioner on this issue.

2. Petitioner seeks to justify a deduction of $114,655.16, as an ordinary and necessary business expense, representing the amount of the bill rendered to it on September 30, 1947, by Reeves-Ely for administrative services.

During most of the period from the time of its formation in 1944 until September 30, 1947, petitioner operated with a skeleton staff. Reeves-Ely owned 50 per cent of petitioner's stock and played a dominant role in the conduct of petitioner's business. It furnished a wide variety of services to petitioner. We do not find it necessary to recount the evidence in this regard; suffice it to say, we are satisfied that such services were on a day-to-day basis and were of a high order of importance to petitioner. If the amount involved is reasonable, it is plainly deductible. Cf. *Smith-Bridgman & Co.*, 16 T. C. 287. Taking into account the scope and character of the services herein over a period of nearly 3 years, we cannot conclude on this record that the charge was excessive, and we have made a finding that it was reasonable, notwithstanding that it was arrived at in negotiations that were not conducted at arm's length.

The fact that petitioner was on an accrual basis does not deprive it of the deduction for the period January 1 to September 30, 1947. Neither the amount nor the formula for determining the amount was agreed upon until near the end of this period. Accordingly, the full amount accrued at the end of the period when the bill was rendered. We hold that petitioner is entitled to deduct the amount of $114,655.16 here in controversy.

3. The third issue relates to the deductibility of advertising and demonstration expenses. In its return for 1946, the petitioner claimed as a deduction $49,946.45 for advertising expense and $53,903.43 for demonstration expense. In its return for the 1947 taxable period it claimed as deductions $114,626.01 for advertising expense and $67,875.96 for demonstration expense. The respondent disallowed $87,170.90 of the amount deducted for advertising and demonstration expenses in the 1946 return, and $134,904.74 of the amount claimed for these expenses in the return for the 1947 taxable period.

The petitioner contends that it was obligated by its contract of August 5, 1945, with the Sanford Company to set aside amounts for advertising and demonstration from the date of that contract through September 30, 1947; that these amounts were set aside and segregated into a separate fund "administered" by the Sanford Company; and that they were properly accrued and constitute allowable business expense deductions for the respective taxable years.

The agreement of August 5, 1945, provided that a commission of 10 per cent on the net billings to the distributors be paid by petitioner

to the Sanford Company on the 15th of the month for the shipments of the preceding month. It also provided that the Sanford Company would receive 6 per cent of the net billings to distributors to cover costs of a demonstration program to promote the sale of Waring products, which amount was payable on the same due date that the commissions were to be paid. It further provided as follows:

A sum equal to ten per cent of the net billings to distributors is to be reserved for advertising. If Sanford takes on the responsibility for the administration of this fund such monies will be paid at the same time as are commissions and demonstration funds. Should the Waring Corporation elect to handle its own advertising it would follow that disbursements would be made to advertisers by the Waring Corporation itself.

During the year 1946 and the 1947 taxable period petitioner segregated and placed in a separate "fund" amounts equivalent to 6 per cent of net billings for demonstration expenses and 10 per cent for advertising and kept them in its physical possession and control in New York City. Petitioner never paid such amounts to the Sanford Company at the time it paid the commissions, or at any other time, and there is no convincing evidence that that company ever demanded their payment or claimed that petitioner was obligated to pay any more than the costs actually incurred for demonstration and advertising.

To the extent that the Sanford Company in fact created obligations against petitioner for advertising and demonstration, the amounts would be accruable as a deduction even though unpaid. But we have been furnished with no evidence of any such specific obligations, apart from the actual payments made by petitioner out of the fund. Accordingly, we must hold that the Commissioner correctly disallowed the deduction to the extent of the unexpended portion of the fund, for, to that extent, no fixed obligation had been created against petitioner or the fund and it was therefore not accruable. At most, the Sanford Company had authority to create such obligation, but until it did so accrual would not be proper.

Petitioner is, of course, entitled to deduct the amounts actually expended, $17,976.80 in 1946 and $47,596.43 in the 1947 taxable period, and if the Commissioner's determination had the effect of disallowing these amounts, an appropriate adjustment may be made under Rule 50.

4. A final question remaining is whether the petitioner is entitled to the benefit of a net operating loss deduction affecting either 1946 or the 1947 taxable period. There is no conflict between the parties on this question, and the answer depends solely upon certain stipulated facts and the resolution of the three preceding issues. The matter will be disposed of under Rule 50.

*Decision will be entered under Rule 50.*