George R. SHIPPY, George Shippy, Jr., Wilda Shippy, Harold Shippy, and Deloris Shippy, Appellants.

v.

UNITED STATES of America, Appellee.

No. 17000.

United States Court of Appeals Eighth Circuit.

Oct. 24, 1962.

---

Robert C. Heege, Sioux Falls, S. D., Ellsworth E. Evans and James R. Adams, Sioux Falls, S. D., on the brief, for appellants.

Arthur Strout, Attorney, Tax Division, Dept. of Justice, Washington, D. C., Louis F. Oberdorfer, Asst. Atty. Gen., and Lee A. Jackson, Harry Baum, Stephen B. Wolfberg, Attorneys, Dept. of Justice. Washington, D. C., and Harold C. Boyle, U. S. Atty., Sioux Falls, S. D., on the brief, for appellee.

Before VOGEL and VAN OOSTER-HOUT, Circuit Judges, and VAN PELT, District Judge.

VAN PELT, District Judge.

Appellants, who are livestock feeders, seek the allowance of a $23,000.00 deduction from the gross income shown on their 1957 partnership income tax return.

The trial court denied the relief requested in an opinion reported as Shippy et al. v. United States of America, D.C., 199 F.Supp. 842. Taxpayers have appealed.

The sole question on appeal is whether the trial court erred in determining that the partnership, of which three of the taxpayers are co-partners, was not entitled to deduct as an ordinary and necessary business expense for the taxable year 1957 the sum of $23,000.00 paid to a local elevator on December 28, 1957 for feed to be delivered in the future as needed by the partnership in its feeding operations.

We hold that the trial court did not err.

The male appellants are a father and two sons. Wilda and Deloris are spouses of the two sons. The men are co-partners operating a ranch and feeding livestock near Colome, South Dakota, under the name George Shippy & Sons. The average number of livestock on feed during the years 1957 and 1958 was 1200. Most of the feed used is purchased. The partnership, during the years involved and for several prior years, had dealt with the local elevator at Colome. Corn in the area in the fall of 1957 was in good supply but was wet. Wet corn could not be stored without drying and as wet corn was ineligible for A.S.C. loans. The wet corn price was lower than the price for dry corn by about 20¢ a bushel. The partnership could not store wet corn on the ranch in large quantities. The feed value of wet corn was as good as dry corn. The partnership could feed about 1000 bushels of wet corn a week.

On December 28, 1957 the father went to the elevator and talked with Mr. Frescoln, one of the co-owners. George R. Shippy says there had been some argument before about the elevator wanting 3¢ per bushel for handling grain; that he told the co-owner

"* * * I told him that if he would get me the grain, would buy the grain, that I would consume a lot of his grain, which was wet corn, and give him a home for it, and I would give him his 3 cents commission for handling it, and he agreed to do it, so I give him a check."

The check referred to was in the sum of $23,000.00. The taxpayer further testified:

"Q. And now tell the Court what the conversation was between you and Mr. Frescoln at that time; what he said, what you said, what anybody else said that might have been there.

"A. There wasn't too much said. We just took it for granted. I presented him with the check after he

agreed he'd give me the—buy the grain for me. That was all."

Mr. Frescoln, the elevator co-owner testified:

"Q. Will you state exactly what you remember of that conversation, that is, what was said by you and what was said by Mr. Shippy?

"A. Well, it's been quite a while ago, but I remember he was in there, and was visiting a while, and he paid up a little account he owed there, 3 or $400.00, and he wondered if—he didn't have room out there to buy grain and store it, the way grain was so wet, no way of holding it, and there was much wet corn in the country, and if he could deposit some money there and take the grain out as he needed it. And of course we had no way of storing that much grain, and we're on an invoice basis, and I couldn't write him a certificate for the grain, but I accepted the check and gave him a receipt for it, and then after he hauled the grain out—I think he hauled one load out there before the first of the year, and then we charged his account for it until all was hauled out."

In answer to questions by the court he further stated:

"The Court: * * * Mr. Frescoln, did you consider this $23,000.-00 check as a deposit for grain to be delivered in the future?

"A. I did.

"The Court: And you didn't consider when he delivered that check to you that he was actually buying $23,000.00 worth of grain?

"A. I did not."

Prior to this transaction, advance payments had not been made.

The record shows that 415 bushels of corn valued at $290.50 were delivered December 30, 1957.[1] The last corn delivered was July 18, 1958 when 120 bushels, 20 pounds were delivered and after the charge therefor of $128.78 there was left in the account $13.98, which was applied against the purchase of oats on August 5.

During this period there was delivered and charged against the $23,000.00, in addition to corn, milo in the sum of $257.60, oats in the sum of $2,507.79, and a bearing at a cost of $1.00.

The corn varied in price from a low of 70¢ on December 30, 1957 to a high of $1.10 on June 28 and June 30. All corn delivered after May 21 was at a price of $1.00 or more per bushel. It totalled over $5,000.00.

Upon filing of the partnership tax return in which the $23,000.00 was deducted as a business expense, the deduction was disallowed by the Commissioner. Assessed deficiencies were made against each partner. The deficiencies were paid under protest and this action was instituted.

Applicable sections of the Internal Revenue Code and of the regulations are:

"§ 162. *Trade or business expenses*

"(a) *In general.*—There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including—

* * * " 26 U.S.C.A. § 162.

[1] This $290.50 clearly constituted an ordinary and necessary business expense for the year 1957. This item apparently was not sharply called to the attention of the trial court nor is any independent brief point as to this error asserted on appeal. The error is briefly mentioned in the brief and is described as not being a compelling or primary reason for the appeal. It is probable that defendants received credit for this item as a business expense in 1958 and it is doubtful whether anything would be gained in switching this expense item from 1958 to 1957. Since taxpayers have not made any specific request for a correction of this error, we feel that no action on our part is required with reference thereto.

Treasury Regulations on Income Tax (1954 Code):

"Sec. 1.461-1. *General rule for taxable year of deduction.*

"(a) *General rule.*

"(1) *Taxpayer using cash receipts and disbursements method.* Under the cash receipts and disbursements method of accounting, amounts representing allowable deductions shall, as a general rule, be taken into account for the taxable year in which paid. * * *. If an expenditure results in the creation of an asset having a useful life which extends substantially beyond the close of the taxable year, such an expenditure may not be deductible, or may be deductible only in part, for the taxable year in which made. * * *

*    *    *    *    *    *

"(3) *Other factors which determine when deductions may be taken.*

"(i) * * * If these overlapping items do not materially distort income, they may be included in the years in which the taxpayer consistently takes them into account. * * *"

It is the contention of appellants that the transaction of December 28th above outlined, constituted a binding contract between the partnership and the elevator operator for the purchase of grain at a handling charge of 3¢ a bushel and that the $23,000.00 was not refundable; that good business reasons prompted the payment and that the payment did not materially distort the partnership's income for 1957. It is further claimed that the payment did not create an asset having a useful life extending substantially beyond the close of the taxable year and that it was actually an ordinary and necessary business expense paid in 1957 and deductible in that year.

The district court held against appellants on each of these claims.

▉ Was this an ordinary and necessary business expense? The trial court says it was not. While we could rely upon the rule that the reviewing court is not to judge the credibility of witnesses and may not retry issues of fact, we choose to discuss the facts and point out that the trial court's findings were proper under the evidence. The answer to this question disposes of the other contentions above set forth.

This was the first time such an advance payment had been made. George Shippy says it was made to assure the purchase of wet corn. It was not used for that purpose alone, however. A considerable part of the corn purchased was not wet. Nearly $2500.00 of the deposit was used to buy oats and milo. These commodities were not mentioned in the conversation between George Shippy and Mr. Frescoln. The elevator operator considered the payment only a deposit. He did not consider that the partnership was actually buying $23,000.00 of grain. No price was agreed upon. The transaction did not provide a delivery date. No quantity was called for.

Taxpayers claim that the conversations constituted an agreement to buy $23,000.00 of grain. Stating it another way, it is claimed that it was a "contract to sell future goods." Sections of the Uniform Sales Act adopted in South Dakota are cited in support of the contention that it was such a contract and that the trial court was wrong in holding "The arrangement made between the partnership and the elevator was not a contract. It was an advance deposit for future purchases of feed." Even if it was a contract, it does not follow that the trial court is to be reversed.

The transaction was, however, more in the nature of an offer than a contract, with the deposit as an evidence of good faith. Whether the transaction rose to the dignity of a contract is determined by resolving factual questions. These the trial court resolved against taxpayers. The answers made by the co-owners of the elevator to the court's questions above set forth, are ample support for the trial court's determination. The

elevator operator did not consider that the partnership was buying $23,000.00 of grain when the check was delivered to him. The court accepted this view of the conflicting evidence.

It is claimed that the $23,000.00 payment was not refundable. The court took the opposite view. The elevator operator when asked about it, after a sentence in which he said nothing, said "Do I have to answer that?" The government attorney said "Yes, I think you do." Appellants' attorney thought he had answered it and the court agreed. Witness further stated: "If Mr. Shippy had to sell his cattle and had no need for the grain I assume I would have given his money back." Taxpayers' contention is that the money was left for the purchase of wet corn. It was used in part for oats, milo, a bearing, and for dry corn. The district court's conclusion

> "It appears that the partnership could have asked for and received a refund of any or all of its unused credit at any time before such credit was exhausted."

was well founded.

It is claimed that the $23,000.00 payment did not materially distort the partnership income for the year 1957. A schedule is compiled for the four years, 1955 through 1958, indicating that to allow the $23,000.00 as expense in 1957 would result in profits of approximately $5,000.00, $24,000.00, $12,000.00 and $8,000.00 for each year, where to disallow the $23,000.00 in 1957 would result in profits of $5,000.00, $24,000.00 and $35,000.00 for the first three years and a loss of $15,000.00 in 1958, which taxpayers claim results in a true distortion. This is taxpayers' strongest factual contention. However, 1957 was the only year in which such a payment was made. Hence it can not be said that the payment was in years in which the partnership "consistently takes them into account." The consistent practice was to pay for feed after it had been delivered. The question of whether the partnership income could be better evened out by such an advance payment is not determinative of the chief issue in this case, namely, whether the $23,000.00 deposit was an ordinary and necessary business expense paid in 1957 and deductible in that year. It is at best only one factor to be considered.

With the contention that tax motive is unimportant if taxpayer does that which the law permits, we agree.

Appellants cite four cases in support of the contention that the payment was an ordinary and necessary business expense. Two, Ernst v. Commissioner, 32 T.C. 181, and Cravens v. Commissioner, 10 Cir., 272 F.2d 895, are referred to in the opinion of the trial judge. We agree generally with his comments thereon and that they are distinguishable from this case. Waring Products Corp. v. Commissioner, 27 T.C. 921, is cited as authority for the proposition that there is no requirement of an underlying legal obligation to make an expenditure before it can qualify as an ordinary and necessary business expense. We do not disagree with this statement. The court went on to say: "The basic question is whether, in all circumstances, the expenditure is ordinary and appropriate to the conduct of taxpayer's business. * * *" This basic question remains for decision in this case.

The fourth case cited is Welch v. Helvering, 290 U.S. 111, 54 S.Ct. 8, 78 L.Ed. 212. It supports the proposition that we should be slow to substitute our judgment for that of the taxpayer, as to whether the expenses were ordinary and necessary. The facts in the Welch case were different than in the instant case, as will be seen from a reading thereof. Notwithstanding the caution of Welch, it does not follow that taxpayer's judgment is always the correct one.

The trial court who observed the witnesses and heard their testimony concluded that the payment was not an ordinary and necessary business expense. We have concluded, as did the trial court, that the partnership did not have a binding contract to purchase wet corn or other grain. It did not actually buy grain. It made only an advance deposit which

would have been refunded upon request. Therefore, the disbursement was not an ordinary and necessary expense paid in the year 1957 in the carrying on of its trade or business.

We affirm the trial court.