Stewart A. DUNN, Jr., Plaintiff,

v.

UNITED STATES of America,
Defendant.

No. 77 Civil 2664.

United States District Court,
S. D. New York.

March 12, 1979.

Kronish, Lieb, Shainswit, Weiner & Hellman, New York City, for plaintiff; Stephen D. Gardner, Laurence J. Kaiser, David E. Cowling, New York City, of counsel.

Robert B. Fiske, Jr., U. S. Atty. for the Southern District of New York, New York City, for defendant; David M. Jones, Asst. U. S. Atty., New York City, of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

Plaintiff Stewart Dunn, a securities analyst and salesman at the time of the events described herein, who was also engaged in the business of farming in the 1960s, commenced this action against the United States to recover an alleged overpayment of taxes in the amount of $17,879.14.[1] This sum represents an assessment against him by the Internal Revenue Service ("IRS" or

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1346(a)(1).

the "Service") for the tax year 1968, based on the Service's disallowance of $28,345 of the taxpayer's claimed deduction for prepayments made on cattle feed consumed in 1969. The government moves for summary judgment on the grounds that the assessment was valid.

The material facts of the case are not in dispute.[2] During 1968 and 1969 plaintiff was a cash basis, calendar year taxpayer who engaged in farming as a business. In November and December 1968 he purchased a total of 292 head of cattle, which were sold for a profit of $14,000 in July and August 1969. On December 11, 1968, plaintiff entered into an agreement with Phelan Brothers Feedlot Co., whereby the latter undertook full care and feed of 185 head of cattle; the consideration for the agreement was plaintiff's prepayment of $18,500 on the feed bill, paid by a check dated December 18, which cleared United California Bank (the "Bank") five days later. The contracting parties entered into a second, similar contract on December 21 with respect to 107 head of cattle. Again, the consideration was prepayment of the feed bill, this time in the sum of $11,770, which plaintiff paid by a check dated December 29, 1968, drawn on his account at the Bank. In this instance the check was payable to "UCB for credit of Phelan Brothers" and so the Bank forthwith debited his account.

The cattle subject to the two agreements consumed $1,924.72 worth of feed in 1968; the remainder, worth $28,345.28, was consumed in 1969. The taxpayer claimed the entire prepayment of $30,270 as an ordinary and necessary business expense for the 1968 tax year and deducted it from his income;[3]

the IRS disallowed $28,345 of the deduction as "a 'deposit' against future feed charges."[4] The taxpayer challenges this disallowance.

Plaintiff admits that he did not prepay for livestock feed in any year other than 1968 and that "[t]ax reasons were part of the consideration for making the payment prior to January, 1969."[5] His total deduction of $30,270 yielded a significant tax saving for 1968. This is apparent by a comparison of his actual tax returns,

|  | Gross Income | Adjusted Gross Income | Taxable Income |
|---|---|---|---|
| 1966 | $ 8,076.88 | $ 8,076.88 | $ 4,854.86 |
| 1967 | $24,846 | $24,846 | $19,658 |
| 1968 | $21,219 | $18,123 | $12,563 |
| 1969 | $ 5,515 | $ 1,218 | ($ 3,766) (loss) |

with his returns as recomputed by the Service, which allocated most of the deduction to 1969,

|  | Gross Income | Adjusted Gross Income | Taxable Income |
|---|---|---|---|
| 1968 | $49,564 | $46,468 | $40,908 |
| 1969 | ($22,830) (loss) | ($27,127) (loss) | ($32,111) (loss) |

The IRS agrees that as a general rule, "amounts paid by farmers on the cash receipts and disbursements method of accounting for feed to be consumed by their livestock in the taxable year of payment . . . are [deductible] business expenses"[6] but relies on Revenue Ruling 75–152 as authority for its reallocation of most of plaintiff's deductions to 1969:

> However, three tests must be met before a farmer using the cash receipts and disbursements method of accounting may

2. In considering a motion for summary judgment, see Fed.R.Civ.P. 56, the Court may only consider facts about which there is no serious dispute. E. g., Royal Indem. Co. v. Westinghouse Elec. Co., 385 F.Supp. 520 (S.D.N.Y. 1974).

3. I.R.C. § 162, 26 U.S.C. § 162 (allowing deductions from income for "ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business"); see Treas.Reg. § 1.162–12(a), 26 C.F.R. § 1.162–12(a) ("A farmer who operates a farm for profit is entitled to deduct from gross income as necessary expenses all amounts actually expended

in the carrying on of the business of farming. . . . The purchase of feed and other costs connected with raising livestock may be treated as expense deductions insofar as such costs represent actual outlay . . . .")

4. Pl. Exh. A.

5. Dep. of Stewart Dunn at 82; see id. at 28–29.

6. Rev.Rul. 75–152, 1975–1 C.B. 144; see Treas. Reg. § 1.162–12(a), 26 C.F.R. § 1.162–12(a) (quoted in note 3 supra).

deduct in the year of payment, the cost of feed to be consumed by his own livestock in a following taxable year. *First*, the expenditure must be a payment for the purchase of feed rather than a mere deposit; *second*, the prepayment must be made for a business purpose and not merely for tax avoidance; and *third*, the deduction of such costs in the taxable year of prepayment must not result in a material distortion of income.[7]

Specifically, the Service requests summary judgment on the ground that the taxpayer's deduction resulted in a "material distortion of his income" for 1968. The taxpayer objects that (1) the revenue ruling is a misstatement of the law and should not be followed, (2) the Service abused its discretion in applying the ruling retroactively against his 1968 returns, and (3) the ruling, in any event, does not support summary judgment in this case. The Court disagrees.

**I**

▮ Plaintiff argues that Revenue Ruling 75–152 cannot govern the present case because it is an invalid statement of the law and contrary to most of the cases. While plaintiff is correct that there is some case law allowing deduction of cattle feed prepayments in the year of payment upon a finding that the prepayment was not a deposit,[8] the decisions that squarely address the issue in the present case support disallowance of the deduction if it materially distorts income.[9] And although revenue rulings do not have the binding effect of Treasury Department Regulations, they do have the force of legal precedents unless unreasonable or inconsistent with the provisions of the Internal Revenue Code.[10] In promulgating the "material distortion of income" prong of Revenue Ruling 75–152, the IRS relied on its powers under section 446(b) of the Code: "If no method of accounting has been regularly used by the taxpayer, or if the method used does not clearly reflect income, the computation of taxable income shall be made under such method as, in the opinion of the Secretary [of the Treasury] or his delegate, does clearly reflect income."[11] The accepted interpretation of the section is that the Service can challenge "not only the over-all method of accounting of the taxpayer but also the accounting treatment of any item."[12]

---

7. Rev.Rul. 75–152, 1975–1 C.B. 144.

8. *See Owens v. Commissioner of Internal Revenue*, 568 F.2d 1233 (6th Cir. 1977), *rev'g* 64 T.C. 1 (1975) (both opinions relying on "deposit" test); *Mann v. Commissioner of Internal Revenue*, 483 F.2d 673 (8th Cir. 1973); *Cravens v. Commissioner of Internal Revenue*, 272 F.2d 895 (10th Cir. 1959); *Gaddis v. United States*, 330 F.Supp. 741 (S.D.Miss.1971). It should be noted, however, that in these cases, where the taxpayer's deduction was upheld, the Court found that "there were sound business reasons for the advance payments." 568 F.2d at 1245; *see Clement v. United States*, 580 F.2d 422, 427 (Ct.Cl.1978).

9. *See Clement v. United States*, 580 F.2d 422 (Ct.Cl.1978); *Shippy v. United States*, 308 F.2d 743 (8th Cir. 1962); *Ernst v. Commissioner of Internal Revenue*, 32 T.C. 181 (1959) (finding income not distorted because consistent pattern of prepayment for cattle feed). The case that most squarely rejected the proposition that a prepayment for feed can be prorated based on distortion of income, *Cravens v. Commissioner of Internal Revenue*, 272 F.2d 895 (10th Cir. 1959), has been implicitly repudiated by its own Circuit, *see Cattle Feeders Tax*

*Comm. v. Shultz*, 504 F.2d 462, 466 (10th Cir. 1974) (reversing lower court decision enjoining enforcement of predecessor to Revenue Ruling 75–152).

10. *Redwing Carriers, Inc. v. Tomlinson*, 399 F.2d 652 (5th Cir. 1968); *United States v. Hall*, 398 F.2d 383 (8th Cir. 1968); *Sandor v. Commissioner of Internal Revenue*, 62 T.C. 469 (1974), *aff'd*, 536 F.2d 874 (9th Cir. 1976); *see Idaho Power Co. v. Commissioner of Internal Revenue*, 477 F.2d 688 (9th Cir. 1973), *rev'd on other grounds*, 418 U.S. 1, 94 S.Ct. 2757, 41 L.Ed.2d 535 (1974); *cf. Burck v. Commissioner of Internal Revenue*, 533 F.2d 768 (2d Cir. 1976) (arguendo).

11. 26 U.S.C. § 446(b).

12. Treas.Reg. § 1.446–1(a)(1), 26 C.F.R. § 1.446–1(a)(1) (quoted with approval in *Thor Power Tool Co. v. Commissioner of Internal Revenue*, —— U.S. ——, —— n.10, 99 S.Ct. 773, 58 L.Ed.2d 785 (1979); *Burck v. Commissioner of Internal Revenue*, 533 F.2d 768, 773 (2d Cir. 1976)).

■■■ The legislative purpose underlying section 446(b) is to ensure that income and expenses are accurately reported in cash basis enterprises, so that taxpayers cannot avoid present taxes by claiming large deductions based on the timing of payments in their cash businesses.[13] In recent years a practice has been engaged in whereby individuals use cattle feed prepayments as a tax shelter to create artificial business deductions that give them wide latitude to offset individual income in any given tax year; Revenue Ruling 75–152 was adopted to limit this manipulation of cash accounting by such "passive farmers."[14] In a number of cases the ruling has been upheld as a valid exercise of the Commissioner's power to "prescribe all needful rules and regulations for the enforcement of" section 446(b).[15] This Court concurs in that judgment and accepts Revenue Ruling 75–152 as the controlling precedent in this case. Indeed, its principle that prepayment for cattle feed should not be credited as a deduction for the year in which it is paid if income would be materially distorted thereby is consistent with the treatment accorded by courts and the Service to prepaid interest,[16] rent,[17] and insurance premiums.[18]

## II

■■■ With respect to plaintiff's attack on the Commissioner's retroactive application of the 1975 ruling to his 1968 tax returns, the general rule is that, like judi-

13. Ward, *Tax Postponement and the Cash Method Farmer: An Analysis of Revenue Ruling 75–152*, 53 Tex.L.Rev. 1119, 1152–53 (1975) (analyzing legislative history and citing to relevant reports).

14. Tax rules and regulations have traditionally shown great leniency to a farmer's choice in accounting methods, *see, e. g.*, Treas.Reg. § 1.471–6(a), 26 C.F.R. § 1.471–6(a), but as farming operations became well used tax shelters, *see, e. g.*, Young, *The Role of Motive in Evaluating Tax Sheltered Investments*, 22 Tax Lawyer 275, 295 (1969), the Service found it necessary to issue the ruling to protect the public fisc. Ward, *supra* note 13, at 1120–21. *See also Zaninovich v. Commissioner*, 69 T.C. 605 (1978); *Miller v. Commissioner*, 65 T.C. 612 (1975).

15. I.R.C. § 7805(a), 26 U.S.C. § 7805(a). The Tenth Circuit found that it could "not hold that the action of the Government in promulgating [the predecessor of Rev.Rul. 75–152] is plainly without any legal basis." *Cattle Feeders Tax Comm. v. Shultz*, 504 F.2d 462, 466 (10th Cir. 1974). No decision has disagreed with this determination, *but cf. Owens v. Commissioner of Internal Revenue*, 568 F.2d 1233 (6th Cir. 1977) (ignoring ruling), and the Court of Claims has also examined and upheld the ruling as controlling precedent. *Clement v. United States*, 580 F.2d 422 (Ct.Cl.1978); *see Stice v. United States*, 540 F.2d 1077 (5th Cir. 1976) (applying first two prongs of ruling); *Miller v. Commissioner*, 65 T.C. 612 (1975) (citing ruling with approval).

16. "In view of certain abuses which have arisen with respect to prepayment of interest by taxpayers using the cash receipts and disbursements method of accounting," the Service issued Rev.Rul. 68–243, 1968–2 C.B. 76, 77, which stated that it would disallow prepayment of interest where it would result in a material distortion of income. Although the ruling announced Service nonacquiescence in two leading decisions, the courts that have examined it have upheld it as a controlling precedent. *See Cole v. Commissioner of Internal Revenue*, 586 F.2d 747 (9th Cir. 1978); *Anderson v. Commissioner of Internal Revenue*, 568 F.2d 386 (5th Cir. 1978); *Resnik v. Commissioner of Internal Revenue*, 555 F.2d 634 (7th Cir. 1977); *Burck v. Commissioner of Internal Revenue*, 533 F.2d 768 (2d Cir. 1976); *Sandor v. Commissioner*, 62 T.C. 469 (1974), *aff'd*, 536 F.2d 874 (9th Cir. 1976); *cf.* I.R.C. § 461(g), 26 U.S.C. § 461(g).

17. Under the rule of the case of *University Properties, Inc. v. Commissioner*, 45 T.C. 416, 421 (1966), *aff'd*, 378 F.2d 83 (9th Cir. 1967), "[r]entals may be deducted as such only for the year or years to which they are applied. If they are paid for the continued use of the property beyond the years in which paid they are not deductible in full in the year paid but must be deducted ratably over the years during which the property is so used." *Accord*, Rev. Rul. 73–176, 1973–1 C.B. 146; *Zaninovich v. Commissioner*, 69 T.C. 605 (1978) (applying *University Properties* rule in farm situation); *Smith v. Commissioner*, 51 T.C. 440, (1968); *see Main & McKinney Bldg. Co. v. Commissioner of Internal Revenue*, 113 F.2d 81 (5th Cir.), *cert. denied*, 311 U.S. 688, 61 S.Ct. 66, 85 L.Ed. 444 (1940).

18. *See* Rev.Rul. 70–143, 1970–2 C.B. 103 (cash basis taxpayer cannot deduct full three-year prepayment of insurance premium); *Commissioner v. Boylston Market Ass'n*, 131 F.2d 966 (1st Cir. 1942); *cf.* Rev.Rul. 77–489, 1977–2 C.B. 177 (prepayment of mineral royalties).

cial precedents, such rulings are to be accorded retroactive treatment absent some compelling reason to the contrary.[19] (Thus the Service is not limited to its original reason for disallowance of the deduction.) Courts have declined to give retroactive effect to regulations and rulings, however, where they would alter established principles of tax law implicitly approved by Congress, lead to unequal treatment among similarly situated taxpayers, or be unduly harsh if applied to a specific case.[20] This Court would be sensitive to any taxpayer reliance, to his detriment, on principles accepted by the Service and the courts in 1968 but later altered by administrative fiat and not in response to the organic evolution of federal tax law.

■ These problems are not apparent in the present case. The taxpayer here cannot claim that the law was clear and settled in 1968,[21] nor can he deny the longstanding principle, recently reiterated by the Supreme Court, that section 446(b) vests "the Commissioner with wide discretion in determining whether a particular method of . . . accounting should be disallowed as not clearly reflective of income." [22] Moreover, Revenue Ruling 75–152 is entirely consistent with the Service's other rulings and regulations and with judicial decisions interpreting its power to issue rulings pursuant to section 446(b).[23] To the extent that the ruling is declarative of the evolving common law of federal income taxation, its retroactive application against plaintiff is not unwarranted.[24]

### III

The question remains whether the ruling compels the conclusion that the deduction was properly disallowed in this case. To begin with, the prepayment, effected with the tax consequences in mind, produced a large and favorable alteration in plaintiff's total tax liability for 1968 and 1969. That the transaction yielded a tax savings, however, does not alone direct a finding of material distortion. Other factors to be considered include "the customary business practice of the taxpayer in conducting his livestock operations, the amount of the ex-

19. *See* I.R.C. § 7805(b), 26 U.S.C. § 7805(b) ("The Secretary or his delegate may prescribe the extent, if any, to which any ruling or regulation, relating to the internal revenue laws, shall be applied without retroactive effect."); Rev.Proc. 68–37, 1968–2 C.B. 926 (every revenue ruling is to be accorded retroactive treatment unless some specific statement of nonretroactivity is included by the Commissioner).

20. *See Dixon v. United States*, 381 U.S. 68, 75–80, 85 S.Ct. 1301, 14 L.Ed.2d 223 (1968); *Anderson, Clayton & Co. v. United States*, 562 F.2d 972, 981 (5th Cir. 1977), *cert. denied*, 436 U.S. 944, 98 S.Ct. 2845, 56 L.Ed.2d 785 (1978); *Chock Full O'Nuts Corp. v. United States*, 453 F.2d 300, 302–03 (2d Cir. 1971); K. Davis, Administrative Law Text § 5.05.

21. *Compare* cases cited in note 8 *supra with* those cited in note 9 *supra*.

22. *Thor Power Tool Co. v. Commissioner of Internal Revenue*, —— U.S. ——, ——, 99 S.Ct. 773, 781, 58 L.Ed.2d 785 (1979). The Court also stated that "[s]ince the Commissioner has '[m]uch latitude for discretion,' his interpretation of the statute's clear-reflection standard 'should not be interfered with unless clearly unlawful.' " *Id.* (quoting *Lucas v. American Code Co.*, 280 U.S. 445, 449, 50 S.Ct. 202, 74 L.Ed. 538 (1930)); *see Commissioner of Internal Revenue v. Hansen*, 360 U.S. 466, 467, 79 S.Ct. 1270, 3 L.Ed.2d 1360 (1959); *Fort Howard Paper Co. v. Commissioner*, 49 T.C. 275 (1967); *Photo-Sonics, Inc. v. Commissioner*, 42 T.C. 926 (1964), *aff'd*, 357 F.2d 656 (9th Cir. 1966).

23. *See* Treas.Reg. § 1.446–1(a), 26 C.F.R. § 1.446–1(a); regulations and cases cited in notes 16–18 *supra; cf.* Treas.Reg. § 1.461–1(a), 26 C.F.R. § 1.461–1(a) (rules for taxable year of deductions).

24. Indeed, in *Dixon v. United States*, 381 U.S. 68, 75–80, 85 S.Ct. 1301, 14 L.Ed.2d 223 (1965), the Supreme Court allowed the Service to give retroactive application to a revenue ruling that reversed its previous acquiescence in a decision of the Tax Court. The Court found that the Commissioner had a rational basis upon which to make his ruling and had not abused his discretion in making it retroactive: "Congress has seen fit to allow the Commissioner to correct mistakes of law, and in § 7805(b) has given him a large measure of discretion in determining when to apply his corrections retroactively." *Id.* at 80, 85 S.Ct. at 1308; *see Automobile Club of Mich. v. Commissioner of Internal Revenue*, 353 U.S. 180, 77 S.Ct. 707, 1 L.Ed.2d 746 (1957). In the instant case, the Commissioner was not reversing his previous position but was merely clarifying the law in a reasonable way.

penditure in relation to past purchases, the time of the year the expenditure was made, and the materiality of the expenditure in relation to the taxpayer's income for the year."[25] These factors weigh heavily against plaintiff's position.

The taxpayer concedes that neither prior nor subsequent to 1969 did he ever prepay for cattle feed. The time of the year is also important: both checks in the prepayment were made in late December, and plaintiff admits that the second check, dated December 29, was given expedited treatment so that it would clear the bank by the end of the year. Finally, the expenditure of $30,270 for cattle feed exceeded the taxpayer's reported gross income for 1968. These uncontested facts lead to the conclusion that the transaction is of the type that section 446(b) and the revenue ruling were meant to cover—the substantial manipulation of personal income by means of an artificial business transaction that allowed the deductible expense to be incurred in a year of plenty and the profits therefrom to be reaped in a lean year.

Accordingly, the Court grants summary judgment to defendant.

See also D.C., 468 F.Supp. 1010.

---

**25.** Rev.Rul. 75–152, 1975–1 C.B. 144, 145; *cf.* Treas.Reg. § 1.471–2(b) ("In order to clearly reflect income, the inventory practice of a taxpayer should be consistent from year to year, and greater weight is to be given to consistency than to any particular method of inventorying . . . ."); Rev.Rul. 68–643, 1968–2 C.B. 76, 77 ("Some of the factors to be considered in determining whether the deduction of prepaid interest gives rise to a material distortion of income include but are not limited to the amount of income in the taxable year of payment, the income of previous taxable years, the amount of prepaid interest, the time of payment, the reason for prepayment, and the existence of a varying rate of interest over the term of the loan.")